S. B. MILLIGAN AND W. F. MILLIGAN, SURVIVING PARTNERS OF THE LATE FIRM OF MILLIGAN MILL COMPANY, PLAINTIFFS IN ERROR, v. W. S. KEYSER AND WILLIAM RUDOLF, COPARTNERS AS W. S. KEYSER & COMPANY, DEFENDANTS IN ERROR.

1.  A declaration in an action at law should alleged distinctly every fact that is essential to the plaintiff's right of action.

2.  Where an action is brought to recover damages for the breach of an executory contract containing mutual undertakings and those on the part of the plaintiff are to be performed before the defendants are to perform their part, the declaration should allege a performance by the plaintiffs of their undertakings, or a sufficient

excuse for non-performance, and an allegation that it was the duty of the defendants under said contract to perform their part, without stating the facts imposing such duty, is not equivalent to an allegation that the plaintiffs had performed their part.

3. The statute and rule which require the contract upon which suit was brought, or a copy thereof, to be filed with the declaration, do not make the contract so filed a part of the pleading, and a copy of the contract annexed as an exhibit to a declaration can not on demurrer be used to supply an essential allegation of fact omitted from the declaration.

4. In an action for the breach of a contract to buy and move lumber cut "in accordance with sizes and prices in said contract stated," in the absence of an allegation that the plaintiffs cut the lumber "in accordance with the sizes and prices in said contract stated," and of a legal excuse for not doing so, and there is no general allegation of performance by the plaintiffs, the declaraation is demurrable.

5. In an action for breach of contract, an allegation in a count of the declaration of duty and obligation of the defendants under the contract, is a mere conclusion, and where the court does not contain allegations of fact showing the duty and obligation it is demurrable.

6. In an action for breach of contract allegations as to what the parties contemplated and intended can not vary the terms of the contract sued on.

7. In an action for breach of a contract to buy and move "all the lumber cut by plaintiffs' mill * * * in accordance with sizes and prices in said contract stated," an allegation that the defendants refused to move "lumber cut by plaintiffs for defendants under the said contract" is not the equivalent of an allegation of refusal to move

lumber cut "in accordance with sizes and prices in the said contract stated," and when the count contains no other allegations sufficiently stating the breach it is demurrable.

8. A count in a declaration in an action for a breach of contract to buy and move lumber cut "upon terms and conditions agreed upon," which contains no allegations as to what were the terms and conditions and of facts showing a breach of the contract, is demurrable.

This case was decided by Division A.

Writ of error to the Circuit Court for Santa Rosa County.

## STATEMENT.

On February 1st, 1904, J. A. Milligan, S. B. Milligan and W. F. Milligan, partners trading as Milligan Mill Company, brought an action in the Circuit Court for Santa Rosa County against the defendants in error. Subsequently J. A. Milligan died, and the cause proceeded in the name of the plaintiffs in error as the surviving partners of the firm of Milligan Mill Company. The declaration as amended contained many counts, with a statement of damages appended. The plaintiffs discontinued all the counts of the declaration except those numbered 1, 2, 4, 6, 7, 8, 9, 10 and 11, and in this court count numbered 11 is abandoned.

The counts of the declaration to be considered, and the contract annexed and referred to in counts number 1, 2 and 4, as exhibit "A," are as follows:

"For that, to wit: on the 1st day of October, A. D. 1902, the plaintiffs and defendants entered into a certain con-

tract, a copy whereof is hereunto annexed marked Exhibit "A" and made a part hereof, whereby the plaintiffs agreed to sell and deliver unto the defendants, and defendants agreed to buy from plaintiffs, all the lumber cut by plaintiffs' mill, situated at Milligan, Florida, during the year from the 1st day of November, A. D. 1902, to the 1st day of November, A. D. 1903, in accordance with sizes and prices in said contract stated, and that the defendants should move every size of the said lumber so contracted for at least once during said year; and the said plaintiffs aver that, notwithstanding the obligation of the said defendants to move every size of the said lumber cut by plaintiffs for defendants under said contract during the said year, from the 1st day of November, A. D. 1902, to the 1st day of November, A. D. 1903, the defendants neglected and refused to move the same, or any of the said sizes, during the said year, whereby the mill yards of the plaintiffs' said mill became so covered, piled up and blocked with lumber cut in said mill by plaintiffs for defendants, as to compel plaintiffs at times to cut less lumber, during the aforesaid year, than they could and would have cut in their said mill, and at times, during the year aforesaid, to suspend altogether the operation of plaintiffs' said mill, and for months after the 1st day of November, A. D. 1903, to suspend altogether the operation of their mill, and prevented plaintiffs from contracting, as they could and would otherwise have contracted, for the cut of their said mill at prices then prevailing, and which were greatly in excess of those which plaintiffs, after the removal of said lumber by defendants, were able to obtain, because of the fall in the market price of such lumber; and plaintiffs aver that defendants had notice of the fact that their

failure to remove said lumber as above stated would injure plaintiffs in the manner aforesaid, and after such notice, and against the demand of plaintiffs, refused to remove the same; and plaintiffs aver that by reason of the said premises plaintiffs lost, to wit: the sum of twenty thousand dollars ($20,000.00) ; and,

2. For that, to wit: on the 1st day of October, A. D. 1902, the plaintiffs and defendants entered into a certain contract, a copy whereof is hereunto annexed marked Exhibit "A" and made a part hereof, whereby the plaintiffs agreed to sell and deliver unto the defendants, and defendants agreed to buy from the plaintiffs, all the lumber cut by plaintiffs' mill situated at Milligan, Florida, during the year from the 1st day of November, A. D. 1902, to the 1st day of November, A. D. 1903, in accordance with sizes and prices in said contract stated, and that the defendants should move such lumber from plaintiffs' mill yard at plaintiffs' expense; and plaintiffs aver that it was the duty of the defendants, under the said contract, to move from plaintiffs' said mill yard lumber cut by plaintiffs for defendants under the said contract, at such times and in such quantities as to avoid so covering up and blocking said mill yard as to interfere with the operation of said mill; and plaintiffs aver that, notwithstanding the premises, the defendants refused to so move such lumber, but left the same on said mill yard in such quantities as to cover and block the same, and interfere with the operation of the said mill, and to compel plaintiffs at times to cut less lumber during the year aforesaid than they could and would have cut in their said mill, and at times during the year aforesaid, and for months thereafter, to suspend altogether the operation of their said mill, and to make it

impossible for plaintiffs to contract, as they could and would otherwise have contracted, for the cut of their mill at prices then prevailing, and which were greatly in excess of prices which plaintiffs after the removal of said lumber by the defendants, were able to obtain, because of the fall in the market price of such lumber; and plaintiffs aver that defendants had notice of the fact that their failure to move said lumber, as above stated, would injure plaintiffs in the manner aforesaid, and after such notice, and against the demand of the plaintiffs, refused to move the same; and plaintiffs aver that by reason of the said premises plaintiffs lost, to wit: the sum of twenty thousand dollars ($20,000.00) ; and,

4   For that, to wit: on the 1st day of October, A. D. 1902, the plaintiffs and defendants entered into a certain contract, a copy whereof is hereunto annexed marked Exhibit "A" and made a part hereof, whereby the plaintiffs agreed to sell and deliver unto the defendants, and defendants agreed to buy from the plaintiffs, all the lumber cut by plaintiffs' mill, situated at Milligan, Florida, during the year from the 1st day of November, A. D. 1902, to the 1st day of November, A. D. 1903, in accordance with sizes and prices in said contract stated, and that the defendants should move every size of said lumber so contracted for, at least once a year; and the said plaintiffs further aver that it was also the duty of the defendants under the said contract to move from plaintiffs' said mill yard lumber cut by plaintiffs under the said contract, at such times and in such quantities as to such extent as to avoid so covering and blocking said mill yard as to interfere with the operation of said mill; and plaintiffs aver that, notwithstanding the premises, the defendants re- .

fused to so move any of the said sizes during the said year, and refused to move, during said year and for months thereafter from plaintiffs' mill yard, lumber cut by plaintiffs under the said contract at such times and in such quantities as to avoid so covering up and blocking said mill yard as to interfere with the operation of the said mill, and left the same on said mill yard in such quantities as to cover up and block the same, and interfere with the operation of said mill; and plaintiffs further aver that by reason of the premises they were greatly damaged by being compelled to cut at times less lumber than they could or would have cut in their said mill, and at times being compelled to suspend altogether the operation of their said mill, both during the said year and for months thereafter, whereby plaintiffs were damaged to wit: in the sum of twenty thousand dollars ($20,000.00); and plaintiffs further aver that thereafter in consideration of the agreement by plaintiffs not to insist upon recission of the said contract, and the agreement of plaintiffs to permit the said lumber to remain on their said mill yard and thereafter to be taken and paid for by defendants under the terms of the said contract, the defendants promised plaintiffs to pay to them all damages sustained by them by reason of the premises, but refuse to pay the same or any part thereof; and,

"6. For that, to wit: on the 1st day of October, A. D. 1902, the plaintiffs and defendants entered into a certain contract, whereby the plaintiffs agreed to sell and deliver unto the defendants and the defendants agreed to buy from the plaintiffs, all the lumber cut by plaintiffs' mill situated at Milligan, Florida, during the year from the

22—S. C.

1st of November, A. D. 1902, to the 1st of November, A. D. 1903, in accordance with sizes and prices in the said contract stated, and that the lumber so cut should be placed upon plaintiffs' mill yard at Milligan and be therefrom removed by the defendants and conveyed at plaintiffs' expense to Pensacola; and that the defendants should move every size of the said lumber so contracted for at least once during the year; and the said plaintiffs aver that, notwithstanding the obligation of defendants to move every size of said lumber cut by plaintiffs for defendants under said contract during the year, the defendants neglected and refused to move the same, or any of the said sizes, during the year, whereby the mill yards of the plaintiffs' said mill became so covered, piled up and blocked with lumber cut in said mill by plaintiffs for defendants, as to compel plaintiffs at times to cut less lumber during the aforesaid year than they could and would have cut in their said mill, and at times during the year aforesaid to suspend altogether the operation of plaintiffs' said mill, and for months after the 1st day of November, A. D. 1903, to suspend altogether the operation of their mill, and prevented plaintiffs from contracting, as they could and would otherwise have contracted, for the cut of their said mill at prices then prevailing, and which were greatly in excess of those which plaintiffs, after the removal of said lumber by defendants, were able to obtain because of the fall in the market prices of such lumber; and plaintiffs aver that defendants had notice of the fact that their failure to remove said lumber, as above stated, would injure plaintiffs in the manner aforesaid, and after such notice, and against the demand of plaintiffs, refused to remove the same; and plaintiffs aver that by reason of the

said premises plaintiffs lost, to wit: the sum of twenty thousand dollars ($20,000.00) ; and

7. For that, to-wit: On the 1st day of October, A. D. 1902, the plaintiffs and defendants entered into a certain contract, whereby the plaintiffs agreed to sell and deliver unto the defendants, and the defendants agreed to buy from the plaintiffs, all the lumber cut by plaintiffs' mill situated at Milligan, Florida, during the year from the 1st day of November, 1902, to the 1st day of November, 1903, in accordance with sizes and prices in the said contract stated, and the lumber so cut should be placed upon plaintiffs' mill yard at Milligan, and be therefrom removed by the defendants and conveyed, at plaintiffs' expense, to Pensacola; and plaintiffs aver that it was the duty of the defendants during the period of the performance of the said contract, and such was contemplated and intended by the said parties when they entered into the same, to move from plaintiffs' said mill yard lumber cut by plaintiffs for defendants under the said contract, at such times and in such quantities as to avoid so covering up and blocking the said mill yard as to interfere with the operation of the said mill; and plaintiffs aver that, notwithstanding the premises, the defendants refused to so move such lumber, but left the same on said mill yard in such quantities as to cover and block the same, and interfere with the operation of said mill, and to compel plaintiffs at times to cut less lumber during the year aforesaid than they could and would have cut at their said mill, and at times during the year aforesaid, and for months thereafter, to suspend altogether the operation of their said mill, and to make it impossible for plaintiffs to contract as they could and would otherwise have contracted, for

the cut of their mill at prices then prevailing, and which were greatly in excess of prices which plaintiffs, after the removal of the said lumber by the defendants, were able to obtain, because of the fall in the market of such lumber; and plaintiffs aver that defendants had notice of the fact that their failure to move said lumber, as above stated, would injure plaintiffs in the manner aforesaid, and after such notice, and against the demand of the plaintiffs, refused to move the same; and plaintiffs aver that by reason of the said premises plaintiffs lost, to wit: the sum of twenty thousand dollars ($20,000.00) ; and

8. For that, to wit: on the 1st day of October, A. D. 1902, the plaintiffs and defendants entered into a certain contract, whereby the plaintiffs agreed to sell and deliver unto the defendants and the defendants agreed to buy from the plaintiffs, all the lumber cut by plaintiffs' mill situated at Milligan, Florida, during the year from the 1st day of November, 1902, to the 1st day of November, 1903, in accordance with sizes and prices in said contract stated, and that the lumber so cut should be placed upon plaintiffs' mill yard at Milligan, and be therefrom removed by the defendants and conveyed at plaintiffs' expense, to Pensacola; and plaintiffs aver that after the expiration of the said year, to wit: the 1st day of November, A. D. 1903, without any right whatsoever, and against the objection and protest of the plaintiffs, the defendants refused to move from plaintiffs' mill yard, large quantities of the lumber cut by plaintiffs for defendants under the said contract, and left the same so covering, piled upon and blocking said mill yard, that, by reason thereof, for months after the 1st day of November, A. D. 1903, plaintiffs were compelled to suspend altogether the operation of

their said mill, and were prevented from contracting, as they could and would have contracted, for the cut of their mill at prices then prevailing, and which were greatly in excess of prices which plaintiffs, after the removal of said lumber by defendants, were able to obtain, because of the fall in the market prices of such lumber; and plaintiffs aver that defendants had notice of the fact that their failure to move the said lumber as above stated, would injure plaintiffs in the manner aforesaid, and after such notice, and against the demand of the plaintiffs, refused to move the same; and plaintiffs aver that by reason of the said premises plaintiffs lost, to-wit: the sum of twenty thousand dollars ($20,000.00) ; and,

9. For that, to-wit: on the 1st day of October, A. D. 1902, the plaintiffs and defendants entered into a certain contract, whereby the plaintiffs agreed to sell and deliver unto the defendants, and the defendants agreed to buy from the plaintiffs, all the lumber cut by plaintiffs' mill situated at Milligan, Florida, during the year from the 1st day of November, 1902, to the 1st day of November, 1903, in accordance with sizes and prices in the said contract stated, and that the lumber so cut should be placed upon plaintiffs' mill yard at Milligan, and be therefrom removed by the defendants and conveyed at plaintiffs' expense to Pensacola; and plaintiffs aver that it was the duty of defendants, during the period of the performance of said contract, and such was contemplated and intended by the said parties when they entered into the same, to move from plaintiffs' said mill yard lumber cut by plaintiffs for defendants under the said contract, at such times and in such quantities as to avoid so covering up and blocking the said mill yard as to interfere with the operation of the said

mill; and plaintiffs aver that, notwithstanding the prem-
ises, the defendants refused to so remove such lumber,
but left the same on the said mill yard in such qauntities
as to cover up and block the same and to interfere with
the operation of the said mill; and plaintiffs further aver
that by reason of the premises they were greatly damaged
by being compelled to cut at times less lumber than they
could and would' have cut in their said mill, and at times
being compelled to suspend altogether the operation of
their said mill, both during the said year and for months
thereafter, whereby plaintiffs were damaged, to-wit: in
the sum of twenty thousand dollars ($20,000.00); and
plaintiffs further aver that thereafter, in consideration of
the agreement by plaintiffs not to insist upon the recis-
sion of the said' contract, and the agreement of plaintiffs
to permit the said lumber to remain on their said mill
yard and thereafter to be taken and paid for by defend-
ants under the terms of the said contract, the defendants
promised plaintiffs to pay them all damages sustained by
them by reason of the premises, but refuse to pay the
same, or any part thereof; and

10. For that, to-wit: before the institution of this suit,
the plaintiffs contracted with the defendants to sell to
defendants the entire cut of lumber at plaintiffs' sawmill
at Milligan, Florida, during the year from November 1st,
1902, to November 1st, 1903, upon terms and conditions
agreed upon between them; and defendants agreed to buy
the same and remove it from plaintiffs' mill yard; that
in order for plaintiffs to properly operate their said mill,
it was necessary for defendants to move such lumber from
plaintiffs' mill yard at such times and in such quantities
as to avoid' blocking up the said mill yard, upon which

it was necessary to pile the lumber as it was cut, and it became and was, accordingly, the duty of defendants to move the said lumber from plaintiffs' mill yard at such times and in such quantities as to avoid blocking up the same; and plaintiffs aver that, notwithstanding the premises, the defendants refused to so move such lumber, and left the same on said mill yard in such quantities as to cover and block the same, and interfere with the operation of the said mill, and to compel plaintiffs at times to cut less lumber during the year aforesaid than they could and would have cut in their said mill, and at times during the year aforesaid, and for months thereafter, to suspend altogether the operations of their said mill, and to make it impossible for plaintiffs to contract, as they could and would otherwise have contracted for the cut of their mill, after the expiration of the said year, at prices then prevailing and which were greatly in excess of the prices which plaintiffs, after the removal of the said lumber by the defendants were able to obtain, because of the fall in the market prices of such lumber; and plaintiffs aver that the defendants had notice of the fact that their failure to move said lumber would injure the plaintiffs in the manner aforesaid, and after such notice, and against the demands of the plaintiffs, defendants refused to move the same; and plaintiffs aver that by reason of the said premises plaintiffs lost, to-wit: the sum of twenty thousand dollars ($20,000.00).

"Pensacola, Fla., October 1st, 1902. State of Florida, S. S.—County of Escambia.

The following contract made and entered into this day between The Milligan Mill Company, of Milligan, Fla.,

and Messrs. William S. Keyser & Company of Pensacola, Fla.—

*Witnesseth*:—That for and in consideration of the sum of one dollar ($1.00) paid by W. S. Keyser & Co. to the Milligan Mill Co., receipt of which is hereby acknowledged, the Milligan Mill Co. agree and contract to sell and deliver unto the said W. S. Keyser & Co., at Pensacola, Florida, the cut of their mill, situated at Milligan, Florida, from the 1st day of November, A. D. 1902, to the 1st day of November, A. D. 1903, in accordance with sizes and prices named below, viz.: For,

```
All Heart Fact 1" to 6-4x4" to 7".........$17.50 per M
All Prime Lumber 1 to 3x11 and up........$19.50 per M
All Prime 1 to 2x9 and 10-inch..........$14.00 per M
All Prime 3 and 4x9....................$13.50 per M
All Crown 1 to 3x9 and up...............$20.00 per M
Italian Genoa Prime.....................$11.00 per M
South American Deals and Scantlings 16 ft.
    up .............................. ...$10.00 per M
South American 1x3, 6-4 & 2x12 12 ft. and
    up ................................$12.00 per M
Rio Deals 14 to 28 ft. long—even lengths..$10.25 per M
Rio Deals 30 ft. and up long—even lengths.$12.25 per M
```

All sizes not otherwise named in the above to be 12 feet and up long.

*Classification*: All of the above lumber to be in accordance with Pensacola classification of December 17th, 1892; lumber to be evenly cut true to size and saw butted, and to be in all respects fully up to the usual manufacture of the Milligan Mill Co.

It is agreed and understood that the Milligan Mill Co.

manufacture their lumber in accordance with schedules which are to be furnished from time to time by the said W. S. Keyser & Co.

The Milligan Mill Co. also agree to stack together any Crown schedule which the said W. S. Keyser & Co. may desire to keep separate from the balance of the lumber.

Above lumber to be inspected by buyer's inspectors at buyer's expense, the inspectors to be mutually satisfactory to both parties.

All above mentioned lumber to be at the risk of W. S. Keyser & Co. as the same is stacked on the lumber beds at Milligan, Florida, The Milligan Mill Co. agree to keep a clear space of two hundred feet (200 feet) between the nearest beds of lumber and any saw, shingle or planing mill or other wood working establishment or dry kiln, in order that W. S. Keyser & Co. may be able to secure the lowest rate of insurance.

Reports of such lumber shall be made to W. S. Keyser & Co. every week, such reports shall be based on the Milligan Mill Co.'s mill reports of lumber cut. When payment in accordance with above mentioned values shall be due in cash or as the lumber is shipped, if any is shipped, prior to said monthly reports, the Milligan Mill Co. hereby agree to accept payment for lumber on hand every thirty days by acceptance as mentioned below in which case the title to all lumber so accepted for shall rest with the Milligan Mill Co. or their assigns whether the lumber is at their mill, in transit, or in vessel, and etc., until each and every such acceptance paying for such lumber shall have been paid. It being understood that in all cases all lumber received from the Milligan Mill Co.'s lumber beds, shall be paid for in cash, and any acceptances given for

same to the amount of value of such lumber removed shall be retired as the lumber is shipped, should same be required at any time by the Milligan Mill Co.

Said acceptances shall be by W. S. Keyser & Co. accepting the Milligan Mill Co.'s drafts at thirty (30) days' sight, or provided W. S. Keyser & Co. pay one-half the discount on same in cash at sixty days' sight. While any acceptances are running and until all the above lumber has been paid for, the lumber shall be kept covered as usual, at the expense of W. S. Keyser & Co. by insurance policies made 'payable to the Milligan Mill Co. and to W. S. Keyser & Co. as their interest may appear.' The insurance covering against fire, while same is on the lumber beds at Milligan, Florida, to be effected by the Milligan Mill Co., premium upon same being paid as arranged above by W. S. Keyser & Co.

It s further agreed that W. S. Keyser & Co. will move every size at least once a year.

This contract to be annulled provided the Milligan Mill Co. sell their mill and property during the time of this contract.

Signed in duplicate.    (Sdg.)    Milligan Mill Co.
Witness              (Sdg.)    W. S. Keyser & Co.
        Wm. B. Runyan."

Demurrers were sustained to all the above counts, and, the plaintiffs failing to amend, final judgment for the defendants was rendered March 23rd, 1906. Writ of error was taken by the plaintiffs who assign as error the sustaining of the demurrers to each of the above counts, and the rendering of final judgment in favor of the defendants.

*Avery & Avery* and *Thomas F. West,* for Plaintiffs in Error.

*Blount & Blount,* for Defendants in Error.

WHITFIELD, J. (*after stating the facts*) :   A declaration in an action at law should allege distinctly every fact that is essential to the plaintffs' right of action. South Florida Tel. Co. v. Maloney, 34 Fla. 338, 16 South. Rep. 280; Savannah, F. &. W. R. Co. v. Willett, 43 Fla. 311, 31 South, Rep. 246; Bennettt v. Herring, 1 Fla. 387.

Where an action is brought to recover damages for the breach of an executory contract containing mutual undertakings, and those on the part of the plaintiffs are to be performed before the defendants are to perform their part, the declaration should allege a performance by the plaintiffs of their undertakings, or a sufficient excuse for non-performance; and an allegation that it was the duty of the defendants under said contract to perform their part, without stating the facts imposing such duty, is not equivalent to an allegation that the plaintiffs had performed their part. See Thompson v. Klye, 39 Fla. 582, 23 South. Rep. 12, S. C. 63 Am. St. Rep. 193. Myrick v. Merritt, 22 Fla. 335; 9 Cyc. 721; City of Buffalo v. Holloway, 7 N. Y. 493, S. C. 57 Am. Dec. 550; Ball v. Doud, 26 Oregon 14, 37 Pac. Rep. 70.

Section 1057 of the Revised Statutes of 1892 and also Circuit Court Rule 14 which require the contract, &c., upon which suit is brought, or a copy thereof, to be filed with the declaration, do not make the contract so filed a part of the pleading, and a copy of a contract annexed as an exhibit to a declaration cannot on demurrer to the

declaration be used to supply an essential allegation of fact omitted from the declaration. See Hooker v. Gallagher, 6 Fla. 351; First Nat. Bank of Florida v. Savannah, F. & W. Ry. Co., 36 Fla. 183, 18 South. Rep. 345; Penrose v. Pacific Mut. Life Ins. Co. of California, 66 Fed. Rep. 253; Oh Chow v. Hallett, 2 Sawyer (U. S.) 259, S. C. 18 Fed. Cases 10, 469; Aultman & Co. v. Siglinger, 2 South. Dak. 442, 50 N. W. Rep. 911; Marshall v. Hamilton, 41 Miss. 229; 8 Ency. Pl. & Pr., 741.

The first, second and fourth counts of the declaration in slightly varying language allege an executory contract by which plaintiffs agreed to sell and deliver and defendants agreed to buy lumber cut "in accordance with sizes and prices in said contract stated, and that the defendants should move" such lumber; and it was the duty of the defendants under said contract to remove the lumber cut by the plaintiffs for defendants under said contract; and that defendants neglected and refused to move the same. Under the contract as alleged in these counts it was the duty of the plaintiffs to sell and deliver to the defendants lumber cut during the stated period by plaintiffs' mill "in accordance with sizes and prices in said contract stated" before it became the duty of the defendants to buy or to remove the lumber, and the performance of such duty of the plaintiffs should be alleged in stating a cause of action. There is no allegation in any of these counts that the lumber which the defendants neglected or refused to move was cut "in accordance with sizes and prices in said contract stated," or even that the lumber was cut under the contract, and there is no general allegation of performance by the plaintiffs of their undertaking; neither is an excuse for non-performance alleged. The

allegations of the duty and obligation of the defendants under the contract are mere conclusions not supported by the facts stated in the counts. Allegations that it was the duty of the defendants to move lumber cut "under the said contract" do not supply allegations that the lumber was cut "in accordance with sizes and prices in said contract stated." The contract "annexed marked Exhibit 'A' and made a part" of counts one, two and four cannot on demurrer be used to supply an omitted allegation of fact essential to the cause of action; and even if it could be so used it is an executory contract, and, of course, does not contain a statement that its provisions on the part of the plaintiffs have been performed. In the absence from these counts of an allegation that the plaintiffs had performed their part of the contract which is a prerequisite to the duty of the defendants to perform their part no right of action against the defendants is shown. The allegations in count numbered four as to a supplemental agreement to pay the damages complained of are insufficient, since it is not alleged that the plaintiffs had a right to rescind the contract, and no other consideration for the agreement is alleged.

Counts numbered six and seven allege a contract containing an agreement to sell and deliver and to buy all the lumber cut during a stated year by plaintiffs' mill "in accordance with sizes and prices in said contract stated, and that the lumber so cut should be placed upon plaintiffs' mill yard at Milligan, and be therefrom removed by the defendants;" and count numbered six contains the further allegation "and that the defendants should move every size of the said lumber so contracted for at least once during the year, and the said plaintiffs aver that, notwithstanding the obligation of defendants

to move every size of said lumber cut by plaintiffs for defendants under said contract during the year, the defendants neglected and refused to move the same or any of said sizes, during the year." Count numbered seven differing from number six alleges "that it was the duty of the defendants during the period of the performance of the said contract, and such was contemplated and intended by the said parties when they entered into the same, to move from plaintiffs' said mill yard lumber cut by plaintiffs for defendants under the said contract, at such times and in such quantities as to avoid so covering up and blocking the said mill yard as to interfere with the operation of the said mill; and plaintiffs aver that notwithstanding the premises the defendants refused to so move such lumber." Neither count alleges that the plaintiffs cut any lumber "in accordance with sizes and prices in the said contract stated." The agreement as alleged in both counts "that the lumber so cut should be * * * removed by the defendants" contemplated that "the lumber so cut" should be cut "in accordance with sizes and prices in the said contract stated," and there is no allegation that it was so cut. The agreement alleged in count numbered six "that the defendants should move every size of the said lumber so contracted for at least once during the year" refers to lumber cut "in accordance with sizes and prices in the said contract stated," and it is not alleged that the lumber defendants refused to move was so cut. The obligation and duty of the defendants stated in the two counts are mere conclusions not supported by the facts previously alleged in the counts. An allegation that it was the duty of the defendants to move "lumber cut by plaintiffs for defendants under said contract," is not sup-

ported by the allegations of fact in the count when there is no allegation that the lumber was cut "in accordance with sizes and prices as in the said contract stated." Allegations as to what the parties contemplated and intended cannot vary the terms of the contract as stated. See Perry, Gov. v. Woodberry, 26 Fla. 84, text page 91. The demurrers to these counts were properly sustained.

The eighth count differs from the others by alleging that "the defendants refused to move from plaintiffs' mill yard large quantities of the lumber cut by plaintiffs for defendants under the said contract." There is in this count no allegation that the lumber was cut "in accordance with sizes and prices in the said contract stated" and no general allegation of performance by the plaintiffs. Refusal to move "lumber cut by plaintiffs for defendants under the said contract" is not apparently a refusal to move lumber cut "in accordance with sizes and prices in the said contract stated." The agreement stated covered "all the lumber cut by plaintiffs' mill" during a given period, and it may be that lumber cut by the plaintiffs' mill during the period was "cut by plaintiffs for defendants under said contract," although not cut "in accordance with sizes and prices in the said contract stated" so as to impose a duty upon the defendants. While it is not material on demurrer to show what were the "sizes and prices in the said contract stated" it is necessary that the counts should contain an allegation that the lumber which the defendants refused to move was cut "in accordance with sizes and prices in said contract stated" or some equivalent allegation in order to show the duty of the defendants and the right of action for failure to perform such duty.

The allegations of the ninth count are equally defective under the principles announced above.

The tenth count alleges that before the institution of this suit plaintiffs contracted to sell to defendants the entire cut of lumber at plaintiffs' mill during a given period "upon terms and conditions agreed upon between them; and defendants agreed to buy the same and remove it from plaintiffs' mill yard," &c. The "terms and conditions agreed upon" are not given, and as it is not alleged that the defendants agreed to move "such lumber from plaintiffs' mill yard at such times and in such quantities as to avoid blocking up the said mill yards" &c., it is not shown to have been the duty, as alleged, of the defendants to move said lumber at such times and in such quantities as to avoid the blocking of the mill yard so as to give the plaintiffs a right of action against the defendants for refusing to so move the lumber. The defendants agreed to buy the lumber cut "upon terms and conditions agreed upon" and to remove it from plaintiffs' mill yard. There is no allegation that the lumber was cut "upon terms and conditions agreed upon" and there is no allegation that in the absence of a time agreed upon to move the lumber it was not moved within a reasonable time with reference to the circumstances of the contracting parties. This count, therefore, does not state a right action against the defendants.

As none of the counts here considered states a cause of action against the defendants the demurrers were properly sustained. The plaintiffs failing to amend the declaration final judgment was properly entered for the defendants and such judgment is here affirmed.

SHACKLEFORD, C. J., and COCKRELL, J., concur.

TAYLOR and HOCKER, JJ., concur in the opinion.

PARKHILL, J., disqualified.