## OF THE

## Supreme Court of Florid,

### AT

## FEBRUARY TERM, 1855,

### HELD AT JACKSONVILLE.

JOSEPH A. BARBEE, PLAINTIFF IN ERROR VS. THE JACKSONVILLE AND ALLIGATOR PLANK ROAD COMPANY, DEFENDAT IN ERROR.

1. The act of the General Asembly, incorporating the Jacksonville and Alligator Plank Road Company, is not in conflict with nor does it cotravene either the 24th Section of the 1st Article, or the 4th Section of the 13th Article of the Constitution of the State.

2. If the defendant demur to the whole declaration and any one of the counts be good, the plaintiff shall have judgment upon the count.

3. Whether a corporation can maintain an action upon an *implied* promise for the collection of assessments made on the shares of stock owned by a corporator, and whether the mere *subscription* for stock, raises an implied assump- sit, quere ?

4. Where there is an *express agreement* on the part of the stockholder to pay for the shares of stock allotted to him, upon default of such payment, he may be proceeded against by *action* at the suit of the corporation, notwithstanding the Charter may provide for the forfeiture or sale of the shares of delinquents.

5. The failure to file a " bill of particulars," cannot be taken advantage of by demurer to the declaration.

Writ of Error to the Circuit Court for Duval County.

This was an action of assumpsit instituted against the plaintiff in Error, to recover the amount of divers assessments upon the shares owned by plaintiff in Error in the capital stock of the said company.  The first five counts of the declaration are based upon a promise to subscribe for stock, made anterior to the incorporation of the Company.  The next five counts are for the several assessments, and they respectively allege a subscription made after the incorporation of the Company by the plaintiff in Error, for ten shares of stock.  The eleventh count is for the aggregate amount of the assessments, and the consideration alleged for the promise, is ten shares of the capital stock in the Company.  The twelfth count is an indebitatus count for money due and payable on account of divers instalments due upon said shares of stock.

The plaintiff in Error demurred to the declaration and assigned the following causes of demurer :

I. That the act of incorporation creating the said plaintiff (defendant in Error here,) a body corporate is unconstitutional and void.

II. That the first five counts in said plaintifl's declaration are and each of them is based upon promises charged and alleged to have been made to plaintiff prior to the act of incorporation.

III. That if the defendant is a stockholder in the said Plank Road Company as is alleged in said plaintiff's declaration, he is not subject to a suit for the amount of his stock subscribed for, in this form of action.

IV. That the Charter of the said Company prescribes the remedy against defaulting stockholders.

V. That the said plaintiff has no where alleged in his said declaration that forty thousand dollars of stock had been subscribed for before said Company went into operation, and further because the said plaintiff no where alleges that the other conditions precedent required by the said Charter to be perferred before said Company could be properly organized, have been performed.

VI. That no proper cause of action has been filed by the said plaintiff in the said cause.

VII. That the said plaintiff does not state in said declaration, by whom the subscriptions were received.

The Court below overruled the demurrer, and judgment was given by the Court (a jury being waived,) on an agreed state of facts, in favor of the plaintiff, (defendant in error here,) for the full amount of its demand.

*McQueen McIntosh* for Plaintiff in Error.

*G. W. Call, Jr.,* for Defendant in Error.

DuPONT, J., delivered the opinion of the Court.

This was an action of assumpsit, instituted in the Circuit Court of Duval County, by the respondent, for the recovery of a sum of money claimed to be due from the plaintiff in error, for divers assessments alleged to have been made upon certain shares owned by him in the capital stock of the said Company. The declaration contains twelve counts, the first five of which are upon a promise to subscribe for

stock, made anterior to the incorporation of the Company. The next five counts are for the several assessments, and alledge respectively a subscription for ten shares of stock made in writing *after* the date of the act of incorporation.

The eleventh count is for the aggregate amount of all the assessments, and the consideration for the promise is alleged to have been ten shares of the capital stock of the said Company and which is deverred to have been subscribed for by the plaintiff in error, *after* the passage of the act of incorporation. The twelfth is an indebitatus count for money due and payable on account of divers instalments due upon the said shares of stock.

To the declaration there was a general demurrer to the whole declaration filed, and in which was set forth divers special causes of demurrer, which will be particularly noticed hereafter.

After due consideration, the Court below overruled the demurrer and by agreement of parties, a jury being waived, the case was submitted to the Court, upon an agreed state of facts, who thereupon gave judgment for plaintiffs, for the full amount of their demand. The only question submitted for our consideration is as to the correctness of the judgment overruling the defendant's demurrer, and in order to a proper elucidation of the subject, we will proceed to consider the several points, in the order in which they are presented.

The first ground of demurrer set fort is, that the act of incorporation creating the said plaintiff a body corporate, is unconstitutional and void. In proceeding to consider this ground of objection, the first point presented is, does the demurrer raise the question of constitutionality? Mr.

34

Chitty in his work on pleading states the office of a demurrer thus:

" When the declaration, plea or replication, &c., appears *on the face* of it and without reference to *extrinsic* matter, to be defective either in substance or form, the opposite party may in general demur.   A demurrer has been defined to be a declaration that the party demurring, will 'go no further,' because the other has not shown sufficient matter against him, that he is bound to answer."   1 Chitty pleading, 661.

And again:   "It should, however, be remembered that a demurrer admits the *facts* pleaded and merely refers the question of their *legal* sufficiency to the decision of the Court."   Ibid.

Mr. Archbold says:   "By a demurrer the party pleading it admits the truth of all facts correctly pleaded in the preceeding pleading, but demurs that they are sufficient to maintain the action, or (if pleaded by the plaintiff,) to bar him from maintaining his action, thus refering the law arising on these facts to the judgment of the Court.   Archbold's Civil Pleading, 308.

Now what is the fact in this connection, which appears on the face of the declaration, and which according to the principle above stated, is to be taken as admitted or confessed by the demurrer?   The averment contained in the first five counts of the declaration, is " the defendant with divers others, were *duly* incorporated by an act of the Legislature of the State of Florida, for the purpose of the construction of the Plank Road aforesaid, by the name and style of the Jacksonville and Alligator Plank Road Co," and each of the succeeding counts contains the same

averment in substance. The fact that the Company had been *duly* incorporated is here expressly admitted by the demurrer, and the constitutionality or legality of that act of the Legislature cannot be thus enquired into, as it amounts to a *denial* of the *truth* of a *fact* expressly averred upon the face of the declaration. If the defendant should desire to present the constitutional question to the Court, it must be done by a special *plea*. This Court is not in the habit of deciding questions which do not legitimately arise out of the proceedings contained in the record; but inasmuch as the question was zealously pressed and very ably argued by the defendant's counsel, and as it appeared to be the mutual desire of the parties to obtain the opinion of the Court upon it, we have departed from our usual practice, and have consented to consider it, as one of the questions arising in the case.

The position assumed by the counsel is, first that the act of incorporation creates a "*monopoly*," inasmuch as it grants to the corporators exclusive privileges; and

Secondly, that it is a "*perpetuity*," there being in the Charter no limit to the time of enjoyment, and that for these reasons it is in direct conflict with the express provisions of the Constitution of the State, and therefore void.

We have been rerfered upon this point to the 24th section of the 1st article of the Constitution, which is in these words:

"That perpetuities and monopolies are contrary to the genius of a free State and ought not to be allowed," and again to the 4th section of the 13th article, which reads as follows: "No Bank Charter or any act of incorpora-

tion granting *exclusive privileges*, shall be granted for a longer period than twenty years, and no Bank Charter shall ever be extended or renewed." These are the only provisions of the Constitution which have been brought to our attention, and in order to ascertain their bearing upon the question, it becomes necessary to consider what is the meaning of the several terms, "*perpetuities*," "*monopolies*," and "*exclusive privileges*," as they are used in the constitution.

With regard to the term "perpetuity," we are clearly of opinion that the convention which framed the Constitution, intended to use it in its legal acceptation, only as applicable to *estates*. A perpetuity may be defined to be such a limita tion of property as will render it unalienable beyond the period allowed by the common law, that is to say, for a life or livs in being, and twenty-one years beyond. If we are correct in regard to the intention of the convention, it becomes manifest that this act of incorporation is not in conflict with the clause of the Constitution in which that term is used.

In regard to the other terms used in the Constution, viz: "monopoly" and ".exclusive privilege," we cannotbetter express our views than by quoting the language of Mr. Walker in his recent treatise on American law ; at page 208, he says, " many of the most important branches of trade and manufactures, all banking and insurance operations, and many of our internal improvements are undertaken and carried on by incorporated companies. Yet although so much of good is thus effected and without any very palpable evil, it is not uncommon to hear corporations denounced as *monopolies*, created for the benefit of the few, to the prejudice

Barbee *vs.* Plank R. Co.—Opinion of Court.

of the many, and hostile to the great republican principle of equality.    But corporations are not necessarily monopolies, in the odious sense of that term.    A monopoly, as the name imports, is  a  special  privilege  conferred on one or more  persons,  to  the absolute exclusion of all others.    In this  sense  it is  deservedly odious, because it is essentially anti-republican.    But  our  corporations  are  not in this sense  monopolies,  although  charters frequently and confessedly enable the members of corporations to  enjoy  capacities and realize advantages, which they  would not enjoy and realize as private individuals, and thus have something of the appearance of creating monopolies, yet so long as no *exclusive privileges* are in fact conferred upon any particular corporation,  and no class of persons are prohibited from membership, they can with no  propriety  be  said  to create monopolies.    Our *Banks* are the  nearest  approach to monopolies, because individuals are expressly prohibited from banking privileges.   Yet even our Banks are not in fact monopolies, because no individuals are  excluded from becoming  stockholders,  if they  have  the  will  and the means."

The  second  ground of  objection is, that "the first five counts in said plaintiff's said declaration, are and each of them is based upon promises charged and alleged  to have been made to plaintiff prior to the passage of the act of incorporation."   We deem  it unnecessary to the correct decision of this case, to determine or  even  to  consider this objection, for even should it be well taken, there are  other sufficient counts contained in the declaration which are not obnoxious to the objection; and it is an admitted principle in pleading that if a defendant demur to the  whole decla-

ration, and any one of the counts be good, the plaintiff shall have judgment upon that count. Chitty on Pleading, 664 ; Archbold on Civil. Pleading, 309; 1 Saunders, 286; 1 Wilson R., 248.

The third objection is that "if the defendant is a stock-holder in said Plank Road Company, as is alleged in said plaintiff's said declaration, he is not subject to a suit for the amount of his stock subscribed for, in this form of action."

The fourth objection, which is in the following words, to wit: "that the Charter of the said Company prescribes the remedy against defaulting stockholders," raises the same question as is raised by the third, and the two may therefore be considered together.

The argument made upon this point by the defendant's counsel, is based upon the provision contained in the 6th section of the act of incorporation, and which provides that "in case of non-payment of any instalment by a stock-holder after due notice by publication or circular for two months, such stock and all previous payments thereon shall be forfeited to the Company.

The first position assumed in the argument upon this part of the case is, that "where the act of incorporation gives no express remedy against a member for assessments, he is liable to no action," and various authorities are cited in support of the position. The case of Cutter vs. the Middlesex Factory Company, (14 Pick. R., 483,) would seem to sustain the position assumed in the argument. The Court say in their opinion in that case, "by virtue of this act, the remedy to enforce the payment of assessments was by sale of the shares, no action would lie either against the

proprietor himself or his executor." But they further remark that "the liability of this corporation depends upon the statute of 1808, C., 65, the original act regulating manufactoring corporations, to the provisions of which express reference is made in the original act of incorporation," and not having access to that statute, in order that we might examine its various provisions, it is impossible to say how far it may be taken to sustain the position as a general proposition of law. There may be contained in that statute for ought that we can know, some *negative* provision which its operation may have restricted the Company to the remedy by sale.

The case of the Andover and Medford Turnpike Corporation vs Gould, (6. Mass. R., 286,) was also cited to the same point, as also the case of the Franklin Gass Company vs. Thomas White, (14 Mass. R., 286,) but they do not in our opinion sustain the position assumed. The question discussed in the former case, which is a leading one on the subject, was not whether the right to maintain an action for assessments on stock, depended upon a power expressly granted in the charter of incorporation, but the point was whether the corporation could maintain an action upon an *implied* promise, growing out of the act of subscription by the corporator. Parsons, C. J., with his usual clearness, discusses this question with marked ability, and the conclusion at which he arrives is "that when the corporators *expressly agree* to pay the assessments, to induce the corporation to make the road, an action can be maintained on that agreement, that if there be no such agreement the remedy for the corporation is by sale of the delinquent's shares, pursuant to the Statute." He also in that opinion

considered the further question, whether the "subscription paper," which had been signed by the defendant, amounted to an *express promise* and determined that it did not and that the action could not be maintained. But it is proper to remark that upon reference to the subscription paper, referred to in that case, it will be found to contain no promise or agreement *to pay*, it is simply an agreement *to take* so many shares of stock, and to become proprietors in the said corporation. We desire to be understood as expressing no opinion in regard to either of the propositions decided in that case, as they do not necessarily arise, nor is the determination of either of them essential to the decision of this cause. It will be time enough when a case shall be presented to us in which the questions do arise, to decide whether an action may be sustained by a corporation upon an *implied* promise, whether the mere agreement to subscribe for shares of stock, as evidenced by the subscription book or in any other manner, shall be taken to raise an implied promise. Until such case shall arise, we desire to leave the questions open for more mature consideration. Much may be said on both sides, and especially where reference is had to the particular phraseology of the several sections contained in the charter of this corporation. In the first section of the act, the usual power to sue in their corporate name is expressly granted to the Company. By the first clause of the sixth section, the corporation is authorized to " *call* for and *demand* from the stockholders respectively, the full amount of the shares of stock by them respectively subscribed, &c." Here the right to " *demand*" is expressly given, and we are to give the term its legal signification, viz : a peremptory requisition, as contra distinguished from

a mere *request* which might or might not be responded to by the stockholder at his option. If this be a *right*, it would seem to result as a necessary consequence, that the common law remedy to enforce the right, that is by action, is also granted. But as before intimated, we leave the question open, as not being involved in the consideration of this case.

It certainly cannot be said that the actual forfeiture of the stock, would in any manner effect the realization of the amounts due for the assessments, and even a sale of the same, would but in very few cases ever produce that result.

In the case at bar the allegation is expressly made in the 6th, 7th, 8th 9th and 10th counts of the declaration, that "the said defendant made and executed a promise or agreement in writing, and delivered the same to the said plaintiff, by which he the said defendant undertook and promised to pay to the treasurer of the said plaintiff, the amount of one thousand dollars for the said ten shares of stock, in such amounts and at such time or times, as should or might be required by the Directors of said Company." This being an express averment contained in the declaration, the demurrer is to be taken to admit the truth of the fact so alleged and the authority cited, goes strongly to sustain the plaintiff's case. There were numerous authorities cited by the counsel for the plaintiff below, which all go to support the position that, where there has been an *express promise to pay*, the corporation may proceed by action for the recovery of the assessments, and we have been able to discover nothing in the authorities cited on the other side which would even seem to contravene that doctrine. The

time allotted to the Court does not admit of our going into an extended examination of the cases cited, nor indeed do we deem it necessary for the purposes of this case, that we should do so. It will suffice to allude to the leading cases as they are collected in Angell and Ames on corporations.

In the case of "The Worcester Turnpike Co. vs. Willard" (5 Mass. R. 80) the Court decided that the defendant having subscribed a contract by which he engaged to take one share, and *to pay all legal* assessments it was a personal engagement to pay assessments, which gave the corporation, a *cumulative* remedy against Willard, in addition to the remedy provided by the Statute to enforce the payment of the assessment by a sale of shares. In the case of "Taunton and South Boston Turnpike Co. vs. Whiting" (10 Mass. R. 327) the case was where one subscribed an engagement to pay on demand to J. G. or order, "all assessments that may at any time be made by said corporation for the pur- pose of laying out said road, making and keeping the same in repair, and for damages to individuals for land &c."— It was holden agreeably to the above case of Worcester Turnpike Co. vs. Williard, that the defendant having ex- pressly promised to pay all assessments, he was liabe, *in an action of assumpsit*, brought by the corporation for the assessments.

Angell and Ames in their work on corporations (495 & 8,)lay, down the doctrine on this subject very broadly, thus; " If a person has incurred a liability to be sued upon a sub- scription as upon a promise, according to the rules we have laid down (though a penalty be given by Statute for non-payment,) he is still liable in an action of assumpsit.

The penalty of forfeiture is cumulative." In the case of the Delaware and Schuylkill Navigation Co., vs. Lawrence Binny (Term) R 70 the subscribers to the Stock signed an agreement to pay two hundred dollars for each share, as the same should be called for; and the act of incorporation inflicted a penalty of five per cent per month, upon defaulters, and directed that when the penalty should amount to the sums paid in, the shares should be *forfeited*. There being an express promise *to pay*, the Court held that the company might waive the forfeiture and proceed personally upon the promise. In the case of Goshen Turnpike Co., vs. Hurtin, (9 John's, R., 217,) the question was made whether the remedy given to the company by the Statute, to exact the penalty of a forfeiture of the shares and of all previous payments, was not the *only* remedy; and the Court expressly decided that it was not. Vide also Angell and Ames on Corporations note 2. In the case of "Grays vs. Turnpike Co." (4 Rand. R., 578,) this question came up for discussion in the Court of appeals of Virginia. The question depended upon the sixth section of the general Turnpike law, which enacted that, "if a stockholder shall fail to pay the sum required of him, the President and Directors may sell his stock at auction, and retaining the sum due, pay the overplus to the owner. But if the sale shall not produce the sum required to be advanced with the incidental charges, then the president and directors may recover the balance of the stockholder, by motion and ten day's notice." The stockholders failing to pay the requisitions, the stock was advertised but not sold for want of bidders; and the question was, whether they were liable to a recovery by motion for the amount of the requisitions.—There

were other questions in the case, but this was considered by Judge Carr, who gave the opinion of the Court, as the most difficult. He however, gave the following opinion in which all the other Judges concurred. " The power to sell the stock of delinquents was given to the company for their benefit. It was thought, no doubt, that this power would, coerce the stockholders to punctuality in paying the calls; and if not, would secure to the company the speedy receipt of the money by sale of the stock. But in case this sale should not raise the whole sum, a motion is given for the balance. Now ought we to turn this power of sale, given for the safety of the company, to their ruin ? If the stock had sold for a single *cent*, there can be no doubt, that this motion would have been sustained for the whole sum required, even for more than is now required; for the sum given would not have paid the costs of sale, and the motion would have been for the sum required with the addition of such costs." There is a degree of sound, practical common sense in the foregoing views which commends them to our cordial approbation. Indeed in this age of enterprise, when all public improvements are accomplished by *associate* efforts, it is of the highest importance, that those who thus associate, should be held to the observance of the most perfect good faith, by compelling them to carry out the agreement into which they may have entered by becoming members of such association. Otherwise, no man would have any guaranty as an inducement for the contribution of his means to the advancement of any enterprise of a public character. If it were the law that an individual stockholder might retire from the corporation at any time and upon his mere whim and caprice, and thereby

incur no further injury than the mere *forfeiture* of his stock, it would give a blow to enterprises of this character, which would be distructive of the best interests of the public. Under such circumstances the most useful enterprises might, at the whim of an individual, be arrested upon the very eve of successful consummation. A proposition which would lead to such results cannot be law, for we are taught that "law is the perfection of reason."

Upon a review of all the authorities to which we have been able to refer, as well as upon principle, we hold the law to be, that when their is an *express* agreement on the part of the stockholder to pay for the shares of stock allotted him, upon default of such payment, he may be proceeded against *by action* at the suit of the corporation, notwithstanding the charter may provide for the forfeiture or sale of the shares of delinquents.

The fifth ground of objection is "that the said plaintiff has no where alleged in his said declaration that forty thousand dollars of stock had been subscribed for, before said company went into operation, and further because the said plaintiff no where alleges that the other conditions precedent required by the said charter to be performed before said company could be properly organized, have been performed." This objection was not particularly pressed at the argument, nor do we think that it is well taken. The declaration expressly avers the due organization of the company, and this being admitted by the demurer, we think is sufficient.

The sixth objection is "that no proper cause of action has been filed by the said plaintiff in the said cause." The statute provides that "all bonds, notes, bills of exchange,

covenants and accounts upon which suits may be brought, or a copy thereof, shall be filled with the declaration. But it has been heretofore decided by this Court, that the failure to file the cause of action, cannot be taken advantage of by demurrer to the declaration. Vide McKay vs. Lane 5th Florida, R. 268. And in the case of Watterman vs. Mattair (5th Flor. R. 211) this Court held, that this provision of the Statute is *directory* only, and if the defendant wants a bill of particulars, he must lay his rule upon the fplaintiff, before plea to the action, to file one.

The seventh exception is, "that the said plaintiff does not state in said declaration, by whom the subscriptions were received." This exception was not noticed in the argument and we presume was abandoned by the counsel. We do not think that it was a fact necessary to be stated in the declaration.

Upon a careful review of the whole case we are of opinion that there is no error in the judgment of the Circuit Court, overruling the defendant's demurrer to the plaintiff's declaration. Therefore let the judgment be affirmed with costs.