C. G. BALLAS, *Plaintiff in Error*, v. LAKE WEIR LIGHT & WATER COMPANY, *Defendant in Error*.

En Banc.

Opinion filed October 18, 1930.

914

916

*Shipp, Evans & Kline,* for Plaintiff in Error;

No appearance for Defendant in Error.

DAVIS, Commissioner:

The plaintiff in error, hereinafter referred to as the plaintiff instituted an action at law against the defendant in error, hereinafter referred to as the defendant. The plaintiff abandoned in the lower court the first, second, third and tenth counts of his second amended declaration, and a demurrer was sustained by the court to the fourth, fifth, sixth, seventh, eighth and ninth counts thereof.

The fourth and fifth counts are based upon an instrument in writing in words and figures as follows:

"Ocala, Florida, Dec. 4th, 1925.
"Messrs. E. H. Jarman, R. L. Barksdale, C. G. Ballas and
Bay Realty Company,
Miami, Florida.
Gentlemen:—

"In consideration of you having effected the sale of nine hundred and thirty (930) acres of my Lake Weir, Marion County, Florida, property, which property *is* more fully described in a contract between Lake Weir Light & Water Company and Louis B. Magid, of Miami, Dade County, Florida, dated Ocala, Florida, December 4th, 1925, to Louis B. Magid for Three Hundred Sixty-five Thousand and no/100 ($365,000.00) Dollars, I herewith agree to pay a total commission of Thirty-two Thousand Seven Hundred Fifty and no/100 ($32,750.00) Dollars, which amount I understand will be divided among you as follows:

Bay Realty Company ................. $16,375.00
E. H. Jarman ...................... 5,458.34
R. L. Barksdale .................. 5,458.33
C. G. Ballas ..................... 5,458.33

 Total ...................... $32,750.00

"Out of the above amounts it is my understanding that you have authorized Mr. Louis B. Magid to deduct therefrom and issue in lieu therefor, participating interest in the corporation, syndicate or trusteeship that he will organize to take over and market this property, the following amounts:

Bay Realty Company ............... $11,250.00
E. H. Jarman ..................... 5,000.00
R. L. Barksdale .................. 3,000.00

 Total ...................... $19,250.00

which will leave me to pay you in cash, as received from the cash payment, $13,500.00—divided as follows:

Bay Realty Company ............... $ 5,125.00
E. H. Jarman ..................... 458.33
R. L. Barksdale .................. 2,458.33
C. G. Ballas ..................... 5,458.34

 Total ...................... $13,500.00

Very truly yours,
R. L. MARTIN, President,
Lake Weir Light & Water Co."
"(CORPORATE SEAL of
Lake Weir Light & Water Company)
WITNESS:
C. A. Savage, Jr.
Lucile Potter, Secretary,
Lake Weir Light & Water Co."

Each of said two counts declares upon the instrument substantially in the form prescribed by the statute for actions upon promissory notes, the fourth count alleging that the defendant ''by its promissory note now overdue,'' promised to pay, etc., and the fifth count alleging that the defendant ''by its contract and agreement,'' promised to pay, etc., the allegations in both counts in other respects being the same. A copy of the said instrument is attached to the declaration as Exhibit ''A'' and made a part of each of said counts. Each of said counts further alleges that it is provided in said promissory note or contract and agreement as the case may be:

''That when sale of the 930-acre tract was concluded he was to receive in cash from cash payment to be made by the purchaser, Magid, the sum sued for in this count, to-wit, $5,458.33;''

that the sale was never completed because the title was defective and the purchaser refused to make the cash payment mentioned in the instrument and refused to close for the purchase of the property because of such defect of title and ''therefore, that part of the contract providing for payment to plaintiff out of the cash payment to be made to defendant by Magid never became effective and was never operative in this connection;'' that later the defendant by it duly authorized agent

''Wrote to R. L. Barksdale and advised him that the title to said tract of 930 acres was not quieted and that no cash payments were ever received or would be received from Mr. Magid;''

that title to the tract having failed the commission was earned and was due and payable at once and that the paper

"Was given by the defendant to the plaintiff, and was executed for and in behalf of the defendant by its president and secretary, and under the corporate seal of the said corporation."

The sixth count follows substantially the statutory form for declaring on a promissory note, and there is attached to and made a part of said count as Exhibit "B" a copy of the instrument in words and figures as follows:

"Messrs. E. H. Jarman, R. L. Barksdale, and C. G. Ballas,
"Miami, Fla.
"Gentlemen:
"In further consideration of your having effected the sale of 930 acres of land, more or less, belonging to L. W. L. & W. Co., to L. B. M., more fully described in a contract between the Lake Weir Light & Water Company and Louis B. Magid, and conforming to a certain map and sketch attached thereto, dated Ocala, Fla., Dec. 4th, 1925, I, R. L. Martin, president of the Lake Weir Light & Water Co., agree to pay you each the following bonus:

E. H. Jarman ..................$1,250.00
R. L. Barksdale ................ 1,250.00
C. G. Ballas .................... 1,250.00

"Signed by R. L. Martin, President, L. W. L. & W. Co.
Signed by Lucile Potter, Secty. & Treas. L. W. L. & W. Co.
"(Seal of the corporation attached.)"

The count alleges that defendant promised to pay plaintiff the sum of $1,250.00 on the 4th day of December, 1925, and that the

"Note sued upon was given by the defendant to the plaintiff, and was and is the note of the said defendant, and was executed for and in behalf of said defendant by its president and secretary and under the corporate seal of said corporation."

The seventh count is similar to the sixth count and with the exception that the instrument is referred to as a contract and agreement instead of a note.

The eighth count alleges that the defendant was the owner of a tract of land comprising 930 acres for which the plaintiff, together with Bay Realty Company, E. H. Jarman, and R. L. Barksdale, at the request of the defendant "found a purchaser, ready, able and willing to buy the same * * * for the sum of $365,000.00;" that in consideration of such service, defendant agreed to pay certain sums to associates of plaintiff and agreed to pay plaintiff the sum of $5,458.33, and that the defendant executed and delivered to plaintiff its agreement and contract, a copy of which was attached to and made a part of the count, the same being the instrument first above set out in full. The count also contains allegations similar to those which we have stated herein following the form of the instrument in our statement as to the first and second counts, with the further allegation that the plaintiff had frequently demanded payment of said sum, but that the defendant had failed and refused to pay the same.

The ninth count contains in substance the allegations of the 8th count and alleges further that the alleged purchaser was accepted by the defendant and that he entered into a binding contract with such purchaser for the sale of said property, receiving a cash payment on the purchase price.

The defendant demurred to the said fourth, fifth, sixth, seventh, eighth and ninth counts of said declaration, hasing its demurrer upon a number of grounds. Those as-

signed to the fourth, fifth, eighth and ninth counts that are necessary to notice may be briefly summarized as follows.

1. The instrument declared upon is not a promissory note.

2. The obligation declared upon is not the defendant's but the obligation of the parties who signed the same and designated themselves president and secretary respectively of the defendant corporation.

3. The allegations are repugnant or inconsistant in relation to matters of substance.

The grounds of the demurrer assigned by the defendant as applying to the 6th and 7th counts of the declaration are embraced within those applying to the other counts.

This Court has repeatedly held that upon demurrer to a declaration containing several counts, if any one of them be good, the plaintiff is entited to judgment on that count or to have the demurrer overruled (Barbee v. Jacksonville & A. Plank Road Co., 6 Fla. 262; Benedict Pineapple Co. v. Atlantic Coast Line R. Co., 55 Fla. 514, 46 So. R. 732, 20 L. R. A. (N. S.) 92; Hodges v. Hunter Co., 61 Fla. 280, 284, 54 So. R. 811, 34 L. R. A. (N. S.) 994); that every pleading is to be most strictly construed against the pleader thereof (American Fire Ins. Co. v. King Lbr. & Mfg. Co., 74 Fla. 130, 77 So. R. 168 (affirmed 250 U. S. 2, 39 Sup. Ct. 431, 63 L. Ed. 810); that where a declaration does not wholly fail to state a cause of action a demurrer thereto should not be sustained (McDonald v. Exchange Supply Co., 88 Fla. 80, 101 So. R. 28; Cummings Mach. Works v. Clark, 89 Fla. 383, 105 So. R. 100); and that when a declaration states a cause of action, surplus allegations not eliminated by appropriate motion may be disregarded. Stinson v. Prevatt, 84 Fla. 416, 94 So. R. 656.

The test of the sufficiency of a declaration is whether it alleges distinctly every fact essential to the plaintiff's right of action; such facts to be characterized by certainty, clearness, and conciseness so that the material issue or issues may be determined quickly and with certainty, and that the defendant may be apprized of the charge against him with that degree of clearness and definiteness as will enable him to prepare his defense properly. Warner v. Goding, 91 Fla. 260, 107 So. R. 406; Milligan v. Keyser, 52 Fla. 331, 42 So. R. 367; Royal Phosphate Co. v. VanNess, 53. Fla. 135, 43 So. R. 916.

In actions of assumpsit, the declaration usually contains only a general recital of the consideration, the promise and the breach thereof (2 Ency. Pl. & Pr. 992) and the same rule applies in covenant except that instead of alleging a consideration, the declaration should show that the contract is under seal (5 Ency. Pl. & Pr. 365-6). If, however, it appears that under the terms of the contract upon which the cause of action is hypothecated, there are conditions to be complied with before the plaintiff is entitled to relief, the performance of such conditions must be alleged, or a valid excuse for nonperformance should be stated and a failure to so allege renders the declaration subject to demurrer. 2 Ency. Pl. & Pr. 999; U. S. Fidelity & Guaranty Co. v. District Grand Lodge No. 27, 58 Fla. 373, 50 So. R. 952; Milligan v. Keyser, 52 Fa. 331, 42 So. R. 367; Myrick v. Merritt, 22 Fla. 335; 4 Ency. Pl. & Pr. 628.

In determining whether or not the court erred in sustaining the demurrer to the said several counts of the declaration as finally amended, the Court is interested in whether all essential allegations of plaintiff's case were made, and not so much in what the plaintiff called the instruments set out in full herein (49 C. J. 121). We, there-

fore, have no intention of pointing out here the peculiar characteristics of a promissory note that tend to distinguish it from other written agreements or contracts.

If we were permitted to look only at those averments in some, if not all, of said counts that show a promise of the defendant in writing under its corporate seal and the breach of such promise, and we could arbitrarily lose sight of other averments that are in apparent conflict therewith, we would probably have no difficulty in holding that said several counts, or at least some of them, do not wholly fail to state a cause of action and that the demurrer should have been overruled. The difficulty arises over the fact that the plaintiff elected not to allege merely such facts as are essential to his case but also to make a part of each count the entire contract upon which such count is based, which, together with other allegations, calls for an answer to the following question: Does the declaration as a whole show that the defendant agreed or promised unconditionally to pay to the plaintiff the stated amount?

. Exhibit "A" is signed "R. L. Martin, President, Lake Weir Light & Water Co.," and "Lucile Potter, Secretary, Lake Weir Light & Water Co.," and Exhibit "B" is signed "R. L. Martin, President, L. W. L. & W. Co.," and "Lucile Potter, Secty. & Treas., L. W. L. & W. Co.," and the corporate seal (corporate seal of Lake Weir Light & Water Co.) is attached or affixed to each instrument at the end of it. It does not purport to be signed in the name of the defendant, by certain persons as officers of the corporation, nor does it purport to be signed for and on behalf of the defendant, though it is so alleged.

In 2 Corpus Juris, 670, the authors say:

"A contract by an agent should be in the name of his principal, so as to show beyond question that it is the

principal who contracts, and not the agent, since the intention of the parties, as legally evidenced by the terms of the contract itself, is always the governing consideration in determining who is bound by the contract. It is not alone sufficient that the agent has authority to bind the principal, but he must in fact make the contract the obligation of the principal in terms, in order to bind him. No particular form of words is necessary for this purpose; the material thing is that it appear on the face of the instrument that it is the principal who makes the grant or incurs the obligation, which induces the contract to be made by the other party.''

And again on page 676:

''According to the strict common-law rule, in order to bind a principal by a deed or contract under seal, it is not enough for the agent to declare in the instrument that he makes it as the agent of his principal, and to add to his signature words expressive of the same thing, but the instrument must profess to bind the principal and must be executed in his name and under his seal as his deed or contract.''

We also find that in 14a Corpus Juris, 597, it is said:

''Under the strict common-law rules the agent of a corporation in order to bind the corporation must affix the name and seal of the corporation and not merely his own, although he describes himself as contracting in behalf of the corporation. But there is a disposition on the part of the courts to depart from the formal requirements of the common law, so as to effectuate what the judges know from the reading of the instrument

to have been the intent of the parties, and by statute in some jurisdictions deeds and contracts executed by the individual for the corporation in the name of his principal or in his own name for his principal are to be regarded as the deeds and contracts of such principal, and anything which the agent executing the deed for the corporation adopts as his seal in so executing it, or as the seal of the corporation for the purposes of the deed, will be deemed the appropriate seal. Under such a statute an instrument under seal may be regarded as the deed of the principal, although signed by the agent in his own name. Where a seal has been unnecessarily fixed to an agreement not required to be under seal which is executed by an officer of the corporation under his own name and title and individual seal, but which purports throughout to be the act of the corporation, it may operate as the contract of the corporation. Notwithstanding the technical rule of the common law that an instrument under seal must be executed in the name of the principal, if the agent of a corporation employs such terms as legally import an undertaking by the corporation only, he is not individually liable thereon, notwithstanding he signs his own name as agent and affixes his own seal. Although the agent attaches his private seal so that it does not become the covenant of the corporation, an action of assumpsit may lie against the corporation, the writing being evidence of a contract by the corporation, but there is authority to the contrary, giving a remedy in such cases against the agent but none against the corporation. The fact that an instrument is attested by the corporate seal of importance as indicating that the parties contemplated a corporate rather than an individual obligation, but it is not controlling. Where

the instrument is under seal, greater weight is to be given the fact that the name of the corporation does not appear in the body of the contract in determining whether the obligation is that of the corporation or of the individual executing it, than in the case of less formal contracts.''

If a contract not required to be under seal, though sealed, is executed in a manner sufficient to be binding on the pricinpal under the rules relating to simple contracts, it is valid against the principal, as a simple contract. 2 C. J. 680; Worrall v. Munn, 5 N. Y. 229, 55 A. D. 330; Schmertz v. Shreeve, 62 Pa. 457, 1 A. R. 439; Hartnett v. Baker, 20 Del. 431, 56 Atl. R. 672; Calhoun v. Buhre, 75 N. J. L. 439, 67 Atl. R. 1068; Purviance v. Sutherland, 2 Ohio St. 478; Kirschbon v. Bonzel, 67 Wis. 178, 29 N. W. R. 907.

In Means v. Swormstedt, 32 Ind. 87, 2 A. R. 330, the secretary of an incorporated company gave a promissory note, using the words ''We promise to pay,'' etc., and signed it with his own name with ''Sec'y'' affixed, and impressed thereon the seal of the corporation, and the court held that he was not personally liable thereon.

In Guthrie v. Imbrie, 12 Ore. 182, 6 Pac. R. 664, 669, 53 A. R. 331, the court held that a promissory note phrased, ''we promise,'' etc., and signed by one, with the additional, ''Prest.,'' and by another with the addition, ''Sec. G. M. Co.,'' and impressed with a seal inscribed, ''Granger Market Co., Portand, Oregon, November 4, 1874,'' was the obligation of the corporation.

In this case, the court arguendo said:

''The rule of construction requires us to give effect to every word, if possible, and if any effect or significance is to be given to the name of the company,

plainly stamped upon the paper or note, we know that
the words 'Prest.' and 'Sec. G. M. Co.' attached to
this signature, instead of being mere surplusage, or
useless appendages, are susceptible of being made oper-
ative consistently with the terms of the whole in-
strument, and mean that these persons are such of-
ficers of that company, and are intended to indicate
the official character in which they acted when the
note was executed. We know that these words were
intended to serve some purpose; and what other pur-
pose can they serve, taking into account the corpora-
tive name, which is consistent with the terms of the
promise, but to indicate their official character, and
that they acted on behalf of the company, and not on
their individual behalf? We know that it is the duty
of the proper officer, generally the secretary, to affix
the seal, to the papers executed by the corporation,
and when, after signing his name and adding his office,
he affixes the seal of the corporation, which, as the
court say in Means v. Swormstedt, *supra*, 'contain-
ing upon its face the proper designation of the corpora-
tion, was a signing of the company name'."

In addition to having the corporate seal attached or
affixed thereto, the instrument under consideration in this
case recites that the "property is more fully described in
a contract between Lake Weir Light & Water Company
and Louis B. Magid." Looking at the whole instrument,
we think it sufficiently appears upon its face to have been
the intent of the parties to bind the corporation and not
to personally bind R. L. Martin and Lucille Potter, and
we so hold.

But was the promise of the defendant an unconditional
promise to pay the stipulated amount? We think Not. In

stating his case, it was improper for the plaintiff to allege a definite, specific, unconditional promise by the defendant to pay, and in the same count show that the promise was conditioned on some event to happen in the future. He cannot blow both hot and cold at the same time. This Court has repeatedly held a count in a declaration bad for repugnance when it contains allegations in relation to matters of substance which neutralize each other, such count therefore fails to state a cause of action. Sovereign Camp, W. O. W., v. Hodges, 72 Fla. 467, 474, 73 So. R. 347; Hoopes v. Crane, 56 Fla. 395, 47 So. R. 992; Kirton v. Atlantic Coast Line R. Co., 57 Fla. 79, 87, 49 So. R. 1024; American Fire Ins. Co. v. King Lbr. Co., *supra*.

It is insisted by the plaintiff in error that the agreement to pay to the plaintiff the sum which he claims, was a distinct obligation, and that the words "as received from the cash payment" as they appear in the contract are not effective to change or alter the promise or agreement of the defendant to pay; or in other words, that the quoted language cannot convert an unconditional promise to pay the sum claimed to be due into a conditional one. In determining the liability of the defendant, we cannot look at only a part of the contract; we must consider the whole of it. Unless the words of the contract which we have just quoted provide a time for the payment by defendant, then no time of payment is fixed by the contract and it became the duty of the defendant to pay immediately upon demand or within a reasonable time the amount claimed by plaintiff.

In 13 C. J. 684, it is said:

"Where a promise constitutes a present liability, and payment is postponed until the happening of an event which does not happen, payment must be made

within a reasonable time," See also Nunez v. Dautel, 19 Wall. 560, 22 L. Ed. 161; Crooker v. Holmes, 65 Me. 195, 20 A. R. 687, Randall v. Johnson, 59 Miss. 317, 42 A. R. 365.

but

"A promise may be conditional, that is, the performance may be due, not immediately, but only after the lapse of time or the happening of a future event. In such cases as a rule the condition precedent must be exactly performed or fulfilled before the promise can be enforced." 13 C. J. 630.

And the event of contingency, on the happening of which the performance of the promise is conditioned may be uncertain, in which case the happening of the event is ordinarily essential to the duty to perform. 13 C. J. 631.

The contract in the instant case fixed a time of payment; namely, when the $13,500.00 cash payment is "received" by the defendant. This being a conditional promise. the payment became due only after the receipt of the cash payment by the defendant inasmuch as a condition precedent must be exactly performed or fulfilled before the promise can be enforced (13 C. J. 630) and such performance must be pleaded in order to state a cause of action. 49 C. J. 145. Furthermore,

"A contract or promise to pay may be restricted to a particular fund, so as to make the raising or the sufficiency of the fund a condition precedent to the liability, and in such case the promise cannot be enforced until the fund is realized, unless the failure to realize or collect the fund from which payment is made is due to the neglect, or to the unreasonable refusal to act, of the promisor, or is otherwise attributable to him." 13 C. J. 631-2. See also Tartar v.

Skaggs, 184 Ky. 58, 211 S. W. R. 203; Stokes v. Walker, 21 Ga. App. 630, 94 S. E. R. 841; Kirchoff v. Cummard, 26 Ariz. 512, 226 Pac. R. 1092; Frank v. Butte and Boulder M. & Lbr. Co., 48 Mont. 83, 135 Pac. R. 904, Edwards v. Baker, 39 Cal. App 755, 180 Pac. R. 33; Smith v. Ross, 51 Mich. 116, 16 N. W. R. 258; Boyson v. Frink, 80 Ark. 254, 96 S. W. R. 1056; 4 R. C. L. 331.

In the article on ''Brokers'' in 4 R. C. L. 331, it is said:

''In the absence of some provision to the contrary a broker's commissions become due and payable upon the completion of the services he has undertaken to perform, and not before. By an express stipulation in the contract of employment, however, the time for payment may be advanced or postponed as the parties see fit, and if they so desire it may be made to depend upon the actual consummation of the transaction negotiated. Thus, the contract between a broker and an owner of real estate may stipulate that the broker shall be entitled to his commission only after the purchaser has made certain payments on the land or performed certain acts, in which event the broker cannot claim commissions until the purchaser has performed the stipulated conditions.''

In Walker and McClelland v. Chancey, 96 Fla. 82, 117 So. R. 705, which is cited by plaintiff in error to support his contention, it appears that the contract between the vendor and broker contained a provision as follows:

''I agree to pay you 10% commission on sale price above stated, payable out of the first cash payment.''

There was evidence to the effect that the owner was able to perform his contract, but being offered a higher price

than that to be paid by the vendee, he failed and refused to perform his contract and under such circumstances this Court held that

"One who prevents or makes impossible the performance or happening of a condition precedent, upon which his liability by the terms of a contract, is made to depend, cannot avail himself of its nonperformance. Likewise, where the promise is to pay out of a fund to be realized in a certain way, there is an implied obligation to use reasonable diligence in performing the act upon which payment is contingent. In default of such diligence, payment becomes due without performance of the condition."

We have no such case here. It is not shown that the defendant refused to convey or that the cash payment was not "received" through any fault, neglect or conduct of his. On the other hand, it is alleged that the *purchaser refused* to make the cash payment out of which plaintiff was to be paid and *refused* to complete the purchase of said property because the title offered by the defendant was defective.

The allegations in counts 4, 5, 8 and 9, showing that the plaintiff was to receive his part of the commission from the cash payment to be made by the purchaser, as well as Exhibit "A" which is made a part of such counts, and cannot be regarded as immaterial and therefore ignored, are inconsistent with the allegations of said counts showing a distinct and definite promise to pay to the plaintiff the sum claimed by him.

But the demurrer was to all counts collectively, and not severally to each of them, and under the rule in force in this jurisdiction all counts must be bad for us to affirm the ruling of the lower court.

Assuming, without holding, that but for the fact that Exhibit "B" was made a part of counts six and seven, a consideration for its execution is sufficiently apparent, we nevertheless find that the instrument recites that "in further consideration" of plaintiff "having effected the sale of" certain lands, defendant agrees to pay "the following bonus." It does not purport to be an agreement to pay the amount named in performance of a duty that he owed to plaintiff or an existing liability. The quoted words imply a gratuitous promise to pay an amount in excess of the sum which promisor had previously obligated himself, and was under a duty, to pay plaintiff for effecting a sale of the property. If the defendant was liable only to pay a certain amount for the service rendered by the plaintiff, a promise to pay any additional sum was without consideration and unenforceable.

We must, therefore, hold that said counts six and seven are bad because, if for no other reason, each of them contains repugnant statements in matters of substance.

No error was committed by the court in sustaining the demurrer. The judgment is affirmed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and adjudged by the Court that the judgment of the court below should be, and the same is hereby, affirmed.

TERRELL, C. J., and ELLIS and STRUM, J. J., concur.

WHITFIELD and BROWN and BUFORD, J. J., concur in the conclusion.