TROWBRIDGE, C. PFEIFFER, Associate Judge.
The Plaintiff below, an engineering firm, filed suit against the Defendant below, the Florida State Turnpike Authority (Hereinafter referred to as the Authority) for breach of contract. A Final Judgment and successive nunc pro tunc final judgments for the engineering firm -were appealed by the Authority and ordered consolidated by this Court.
Suit was instituted by the Plaintiff in January 1961. In April 1962, the cause had reached the posture in the lower court which is significant on this appeal. At that time, the cause stood on an Amended Complaint, an Answer thereto, the Answers to Interrogatories by Defendant Hammer and Plaintiff’s president, a copy of the subject contract, and a certain trust indenture of *200 the Authority. There was before the court Defendants’ motion for decree on the pleadings and motion for summary judgment and Plaintiff’s motion for summary judgment.
Upon hearing, the court, on April 30, 1962, denied both of Defendants’ motions and granted Plaintiff a partial summary judgment as to liability. The question of damages was tried by a jury and a judgment for $72,504.52 was entered consequent upon the verdict for the Plaintiff.
The points presented on appeal are all directed to alleged error in the denial of Defendants’ motions and the entry of the partial summary judgment for Plaintiff on the issue of liability.
The pleadings and other papers before the court at the time it granted the partial summary judgment disclose the following facts: In February 1956, the engineering firm entered into a contract in writing with the Authority wherein it was agreed that the Plaintiff was to perform certain comprehensive engineering services subject to the terms and conditions set forth in the contract. In June of 1956, the Authority assigned to the Plaintiff additional work which was designated as a part of Section 16. The Plaintiff entered upon the performance assigned and expended considerable money thereon until the events occurred which brought about this suit. Plaintiff alleged that it “has duly performed all the conditions of said contract on its part at the time and in the manner therein specified, except insofar as Plaintiff has been prevented from performing by the acts or failure to act of the Defendants, and Plaintiff on its part remains ready and willing to perform all the obligations of said contract as originally agreed.” According to the contract, the Plaintiff was to be paid from funds as follows:
“10. SOURCE OF FEE PAYMENTS — The Authority anticipates that it will finance construction of the project by issue and sale of revenue bonds. To date, the Authority has not issued any such revenue bond. It is expressly understood that all payments for Section Engineer services performed under this Agreement shall be made solely from the proceeds of revenue bonds when sold by the Authority to finance construction of Sunshine State Parkway, Project No. 2., Fort Pierce to Jacksonville, or from other funds, if any, which may be or which may have been legally made available to the Authority for such purpose, and the Authority shall be under no liability under this Agreement to make payments to the Section Engineer from any other source. The payment of said fees is contingent upon the availability of funds derived from the proceeds of said revenue bonds, or from such other funds as are mentioned in the preceding sentence, and the liability of the Authority is limited thereto.”
During the course of the work the Authority made a partial payment to the Plaintiff in the amount of $Z3,000.00. No further payments were made by the1 Authority and, after repeated requests by the Plaintiff for payment, suit was instituted for breach of contract.
The Authority in its answer denied that the Plaintiff had performed all of the conditions of the contract and set forth the affirmative defense that under Section 10 of the contract the payment of fees was contingent upon funds derived from the sale of revenue bonds to finance construction of the Sunshine State Parkway, Project No. 2, Fort Pierce to Jacksonville; that the Authority has not sold and is not now anticipating selling any revenue bonds to finance the construction of an extension of the Sunshine State Parkway from Fort Pierce to Jacksonville; and that, therefore, under Section 10 of the contract, which is the basis of this suit, there is no liability on the part of the Authority and no justiciable cause on which the Court could render a judgment.
The Plaintiff directed certain interrogatories to John M. Hammer, Chairman of the Authority, who answered under oath that *201 the Authority is not now anticipating- selling any revenue bonds to finance the extension of the Sunshine State Parkway from Fort Pierce to J acksonville, but admitted that his answer was based solely upon the fact that any revenue bonds which were anticipated to be sold would not carry the tumike any further north than Ocala or Wildwood rather than going all the way to Jacksonville. He testified that the bonds which had been sold to finance the extension of the turnpike covered an area which either paralleled or is directly upon or adjacent to Section 16 of Project No. 2, which had previously been contracted to the Plaintiff. He further testified that the Authority presently had under contract a man to do the engineering for the equivalent of Section 16, Project No. 2, who was the superintendent of the Plaintiff during the time it was likewise working on Section 16, Project 2. In response to a question as to why the Authority had completely disregarded the contract with the Plaintiff, Mr. Hammer answered :
"A. 20. Shortly after I became Chairman I was informed by the traffic and earnings engineers that it was not feasible to extend the Turnpike from Fort Pierce to Jacksonville, and therefore the Authority abandoned the project that was formerly under way by the prior administration. I considered all work done under that project as part of it and therefore abandoned. It was my understanding that there was no liability under any of the contracts of the Section Engineers because they were contingent contracts based upon the Authority’s selling the bonds to finance the project for which they were working. It was my belief at that time, and it is my belief now, that these engineering firms took and did any work, on a theory that they would not be paid unless the bonds were sold for that project. Therefore, I feel that all the contracts were in nullity when the project was determined unfeasible.”
Mr. Hammer also testified that it is still not clear that the turnpike will not in fact go to Jacksonville, while at the same time he stated that he cannot truthfully say that the Sunshine State Parkway will ultimately end in Jacksonville, as the final decision on that matter has not been made by the Authority. He stated that the preliminary alignment for the location of Section 16 of Project No. 2 prepared by the Plaintiff was approved by the Authority, that the Plaintiff had notified the Authority on one or more occasions of its willingness to complete the contract, and that the Authority had never replied to any such notifications.
All of the points upon appeal presented by the parties may be condensed into two basic-questions: (1) Was the entry of a Partial' Summary Judgment upon liability for Plaintiff proper upon the record as it then stood?, and (2) Did the abandonment of the complete turnpike from Fort Pierce to Jacksonville and the construction of the bobtailed turnpike to Wildwood discharge Plaintiff’s contract with the Authority ?
The first point may be disposed of without extended discussion. Both parties recognize that summary judgment is proper in those cases where there are no genuine issues as to any material facts and the moving party is found to be entitled to a judgment as a matter of law. The pleadings and answers to the interrogatories in this case show that there was no genuine issue as to any material fact. (Whether the moving party was entitled to a judgment as a matter of law will be discussed under the second point.) No question was raised concerning the execution of the contract, the part payment by the Authority to the Plaintiff, the part performance of the Plaintiff or its willingness to perform the remainder of the contract, -and the refusal of the Authority to permit the Plaintiff to complete performance under the contract and to pay the Plaintiff. Whether the work performed by Baker was utilized by the Authority is immaterial since the contract required and *202 Baker was willing to perform all of the work necessary for this section.
Accordingly, the only question that remained with regard to liability was whether the dropping of the complete project to Jacksonville in favor of the bobtailed project to Wildwood discharged the Authority from all liability under the contract. This was purely a question of law which the trial court could and did resolve when it entered the Partial Summary Judgment for the Plaintiff.
Neither party has cited to this Court a case involving a contract with language similar to that contained in the agreement under consideration. There are many cases involving actions by real estate brokers to recover contingent commissions, such as Balias v. Lake Weir Light & Water Co., 100 Fla. 913, 130 So. 421 (1930). However, the reasoning in those cases does not appear to be applicable to the instant situation. A real estate broker is in business to act as an agent or a middleman for the sale of realty. When a broker contracts to find a buyer he ordinarily malees his commission entirely contingent upon his producing a qualified buyer. The end result of his contract is to find such a buyer and the contingency upon which his fee is based is the sole purpose of the contract. This is not true of the agreement in the case at bar. The Plaintiff here was not contracting for the purpose of selling revenue bonds or otherwise procuring funds for financing or promoting the Sunshine State Parkway. The Plaintiff was selling engineering services and it was concerned with designing and eventually supervising the construction of Section 16 of Project No. 2 of the Sunshine State Parkway.
The defense offered by the Authority is based entirely upon the fact that the Authority determinéd only to sell revenue bonds to finance that portion of Project No. 2 as far as Lake County and not to sell bonds to finance the project all the way to its eventual terminal in Duval County. If the argument of the Authority were accepted, the Authority could in the future let contracts for preliminary engineering services prior to a bond issue, wait until the services had been performed, then change the route or shorten or lengthen the project to some degree and thereafter issue the bonds to finance only the altered route and 'avoid all contractual obligations incurred for preliminary work on the project. While this Court would not expect such conduct on the part of a state agency, its theoretical possibility renders the argument invalid.
Section 340.03(2) Fla.Statutes 1961, F.S.A., provides that:
“The authority is hereby authorized and empowered to construct, maintain, repair and operate an additional turnpike project and such project is hereby established at the following location or such part or parts thereof as the authority may determine to be suitable for a project as contemplated by this section : Beginning at a point in St. Lucie county thence in a generally northwesterly direction to a point in Lake county, thence in a generally northerly direction through Marion county, to a point in Duval county in the vicinity of the metropolitan area of the city of Jacksonville.”
If the turnpike project is to be continued to its conclusion, the project will' eventually terminate in Duval County unless the Legislature, not the Authority, changes the present law. The fact that the entire project to Duval County is not to be financed at this time is immaterial to Plaintiff’s claim because the contract with the Plaintiff is concerned only with that portion of the project which has been financed by the bonds for the bobtailed project. In this regard, it should be noted that the Supreme Court of Florida, in an appeal from the bond validation proceedings for the financing of the bobtailed project specifically held that the route of the bobtailed turnpike did not constitute a material departure from the legislatively designated route; State v. Fla. State Turnpike Auth., 134 So.2d 12 (1961).
*203 For the foregoing reasons the entry of the partial summary decree upon liability for the Plaintiff was proper. All of the questions concerning damages suffered by the Plaintiff were resolved in the jury trial and, as noted above, no assignments of error have been directed toward the trial proceedings.
Affirmed.
SMITH, C. J., and SHANNON, J., concur.