GRIMES, Acting Chief Judge.
This is an appeal from a judgment dismissing a suit for foreclosure “without prejudice to filing a new action upon conclusion of a reasonable time.”
On December 22, 1980, Machry and Ra-maker entered into a joint venture agreement for the development and sale of condominiums on land to be conveyed by Ma-chry to Ramaker and on adjoining land already owned by Ramaker. Ramaker would manage the joint venture and Ma-chry would receive twenty-five per cent of the profits. On the same date, Machry contracted to sell his property to Ramaker with the sale to be closed on August 1, 1981. The contract provided that Ramaker would give Machry a noninterest bearing promissory note, secured by a purchase money mortgage which could be subordinated to an institutional construction loan. The note was to be payable in increments upon the sale of the condominium units, but in any event, “not later than twelve (12) months following the date of said note and mortgage.” Late in December of 1980, Machry and Ramaker met with Sharp, as the authorized representative of Kronos Corporation, with a view toward obtaining the funds to be used to pay off a contract for deed under which Machry was buying the land to be conveyed to Ramaker. As a consequence, Kronos loaned Ma-chry $157,678.00 pursuant to a promissory note due on August 1, 1981, which was secured by a collateral assignment of Ma-chry’s interest in the land.
The contemplated sale closed on or about August 1, 1981, with the property being conveyed to San Terra Development, a partnership consisting of Ramaker and Stauffacher. San Terra gave Machry a promissory note for $270,057.60, secured by a mortgage on the land. The note was payable as specified in the sales contract except for the twelve-month provision which was changed to read that “in any event, payment in full of any amount still unpaid on this note shall be paid on or before one year from the date of the first construction draw pursuant to a construction loan closed to construct all or part of the above referenced condominium units.” Machry did not pay his note to Kronos when it was due. Nevertheless, Kronos released its interest in the prior Machry collateral assignment and received in lieu thereof an assignment from Machry of the San Terra note and mortgage.
Thereafter, Kronos assigned its rights in the transaction to Sharp. When Machry’s note remained unpaid, Sharp looked to the collateral security. However, the proposed condominiums were never constructed and the San Terra note was also unpaid. Sharp then brought suit on January 17, 1983, to foreclose the San Terra mortgage as the collateral security for Machry’s unpaid note.
At trial, the pivotal question was whether the San Terra note and mortgage were in default because there had never been a construction draw. Sharp contended that in representing Kronos he had relied upon the language of the sales contract which called for the note and mortgage to be payable within one year from execution. He testified that he did not realize that the due date on the note and mortgage as executed had been changed to provide for payment within one year of the first construction draw. Ramaker testified that the provision for repayment within one year was mistakenly placed into the original sales contract and that he caused it to be corrected when the note and mortgage to *135 Machry were later executed. He said he knew how long it would take him to complete the development once he started construction, but he did not have total control over when a construction loan would be forthcoming. He felt that he needed to allow time to make some preconstruction sales, which are usually required by prospective lenders. In any event, in their opening statements, the attorneys for both sides argued that applicable law required that the San Terra note be construed as one without a due date and therefore payable within a reasonable time. After hearing the evidence, the court ruled that a reasonable time had not yet passed and dismissed the action.
On appeal, Sharp argues that by May 8, 1985, the date of the trial, more than a reasonable time had elapsed since August 1, 1981, for the San Terra note to become due and payable. In addition to supporting the trial judge’s conclusion that a reasonable time had not yet expired, appellees now also argue that the note should be interpreted to mean that the construction draw was a condition precedent to liability as in Ballas v. Lake Weir Light & Water Co., 100 Fla. 913, 130 So. 421 (1930). In that case the supreme court approved a quotation from 13 C.J. 631-632 which provides:
“A contract or promise to pay may be restricted to a particular fund, so as to make the raising or the sufficiency of the fund a condition precedent to the liability, and in such case the promise cannot be enforced until the fund is realized, unless the failure to realize or collect the fund from which payment is made is due to the neglect, or to the unreasonable refusal to act, of the promisor, or is otherwise attributable to him.”
100 Fla. at 929, 130 So. at 427. See also Marina Apts., Inc. v. Bloch, 128 So.2d 615 (Fla.3d DCA 1961).
Thus, the initial question we must decide is whether the existence of a construction draw was a condition precedent to liability. In this regard, the following statement from 17 Am.Jur.2d Contracts section 339 (1964) appears to be pertinent:
The real significance of the provision that the instrument is payable upon the happening of an event that is wholly or partially within the control of the promis- or is apparent after it has been determined whether the debt is an absolute one. If the instrument, read in the light of the surrounding circumstances, shows that the debt is an absolute one, it is reasonable to suppose that the parties intended that a reasonable effort should be made to cause the event to happen within a reasonable time. Some courts declare broadly that where payment is to be made upon a condition under the control of the promisor, an action may be brought within a reasonable time. Moreover, where a debt is due and the happening of a future event is fixed on merely as a convenient time for payment, but the future event does not happen as contemplated, the law implies a promise to pay within a reasonable time. [Footnotes omitted.]
In Peacock Construction Co. v. Modern Air Conditioning, Inc., 353 So.2d 840 (Fla.1977), two subcontractors sued the contractor to recover for work done on a condominium project. The contractor had not received from the owner full payment for the subcontractors’ work. In refusing to pay the subcontractors, it relied upon a provision in the subcontracts which provided that the contractor would make final payment to the subcontractor
[Wjithin 30 days after the completion of the work included in this sub-contract, written acceptance by the Architect and full payment therefor by the Owner.
The court rejected the contention that this provision constituted a condition precedent to the contractor’s liability. The court construed the language to constitute an absolute promise to pay which was merely postponed for a reasonable time after completion of the subcontractors’ work and the request for payment. See Gulf Construction Co. v. Self, 676 S.W.2d 624 (Tex.App.1984), which reached the same result in the *136 face of contract language which provided that “[u]nder no circumstances” shall the contractor be obligated to pay the subcontractor until funds have been advanced by the owner.
In Whiting v. Gray, 27 Fla. 482, 8 So. 726 (1891), the plaintiff sued the defendant for breach of a contract to sell the plaintiff a quantity of lumber to be delivered in increments to a wharf “commencing from the 10th of July, or as soon thereafter as vessel can be ready.” The defendant argued that the plaintiff did not furnish a vessel alongside the wharf to receive the lumber in a timely fashion. The court affirmed a judgment for the defendant on the premise that the plaintiff had failed to perform his contractual obligation to charter a vessel within a reasonable time. In support of its holding, the court summarized an early United States Supreme Court decision as follows:
In Nunez v. Dautel, 19 Wall. 560 [22 L.Ed. 161] the contract was to pay money “as soon as the crop can be sold or the money raised from any other source,” and the supreme court of the United States held that, no time having been specified within which the crop should be sold or the money raised otherwise, the law annexed, as an incident, that one or the other should be done in a reasonable time; that payment was not wholly or finally conditional or dependent upon the alternative mentioned, but that the stipulations secured to the promisors a reasonable amount of time within which to procure in one mode or the other the means necessary to meet the liability, and upon the occurrence of either event or the lapse of such time the debt became due; that it was not the intention of the parties that, if the crop were destroyed, or from other cause could never be sold, and the defendants could not procure the money from any other source, the debt should never be paid; that this would be a mockery of justice.
27 Fla. at 488, 8 So. at 727.
The case of Engle v. First National Bank, 590 P.2d 826 (Wyo.1979), is instructive. There, the plaintiffs had provided labor and material in the construction of a house which was located on a ranch. The owners were to pay the plaintiffs from income produced from the ranch. After much of the work was completed, a bank foreclosed on the ranch. The court upheld the plaintiffs’ claims of lien even though the ranch never produced the income from which the plaintiffs were to be paid. In emphasizing the difference between an ex-ecutory contract and one substantially performed by one of the parties, the court stated:
A debt conditioned on the happening of an event cannot be enforced until the event happens, but where the debt is actually in existence, and payment is merely postponed until the happening of an event which does not happen, payment must be made within a reasonable time and that depends upon the circumstances of each case.
500 P.2d at 831.
Likewise, in Gift v. Ehrichs, 284 N.W.2d 435 (N.D.1979), one of two stockholders in a closely held corporation acquired the stock of the other in exchange for a promissory note dated August 15, 1971, that was payable in installments in any fiscal year in which the company realized “sufficient net profits to lawfully declare and pay a dividend.” The selling stockholder’s personal representative sued to collect the note in 1977, even though the corporation had never realized sufficient net profits to lawfully pay a dividend. The court reasoned that the obligation to pay was absolute and rejected the contention that the realization of sufficient net profits to pay a dividend was a condition precedent forever to the payment of the note. The court affirmed the judgment which had set January 31, 1979, as the reasonable date for payment. See Stewart v. Maranville, 58 N.C.App. 205, 207, 292 S.E.2d 781, 782 (1982), stating “we refuse to find a condition precedent to the obligation to repay a loan unless the conclusion that the parties so intended is inescapable.”
*137 Therefore, we reject appellees’ contention that the obtaining of a construction draw was a condition precedent to payment of the San Terra note. San Terra obtained the land in exchange for the note, and we hold that its obligation to pay was absolute. Thus, we believe that the parties and the court below correctly perceived that the controlling issue in the case was whether a reasonable time for the payment of the note had elapsed since August 1, 1981.
Only three persons contributed evidence on the issue of reasonable time. From Sharp’s standpoint, a reasonable time was one year because he had always assumed that payment was required to be made within a year until he belatedly examined the precise language of the San Terra note. He also said he understood from Ramaker and Machry that the construction of the condominiums would be completed within the one year period. Machry testified that he and Ramaker contemplated that the mortgage would be paid in full within a year. He said that “[a]ll of our thinking was predicated on the building taking place at such a pace that we’d be out in a year.” Machry further testified that when the sale was closed, he felt that the construction loan was already in place with Clearwater Federal and available for Ramaker once he proceeded with construction. As he expressed it, “the money was ready to go, but he did not want to draw the money down for a month, maybe six weeks, until he was ripe and ready and he would save the interest for that period of time.”
Ramaker testified that following closing he had been unable to commence the development because of a declining condominium market and rising interest rates. He explained how some prospective purchasers had backed out of their preconstruction contracts. He also said he sent out 1200 mailings to various professional groups without success. While there had been very little activity on the project for the year immediately preceding the trial, Ra-maker testified that in his opinion the market was now ripe for a renewed development effort. He said he had recently resubmitted a site plan to the county. On the other hand, he admitted that he was now trying to sell in bulk the adjoining property that was originally contemplated to be included in the development.
Assuming Ramaker’s good faith and the fact that conditions beyond his control prevented the successful commencement of the development, we believe this is beside the point. Evidence concerning the bona fides of Ramaker’s efforts would be most relevant if this case were controlled by Balias because in that instance the condition precedent to payment may only be excused upon the neglect or unreasonable refusal to act on the part of the promisor. Here, however, the determination of a reasonable time for the maturity of the San Terra note must be made from the matters within the contemplation of the parties at the time the note was signed. What constitutes a reasonable time for repayment depends upon the facts and circumstances surrounding the execution of the note rather than upon the occurrence of subsequent events. Measured by this criteria, a reasonable time has now elapsed. We need not determine exactly when the San Terra note became due and payable; suffice it to say, that time has now passed. Since the note remains unpaid, Sharp is entitled to foreclose the mortgage.
Reversed.
DANAHY and SCHOONOVER, JJ., concur.