SHARP, Judge.
International Community Corporation (ICC) appeals from a final judgment entered after a non-jury trial which denied it reimbursement from the buyer (Orange Entertainment Center, Inc.) of a $200,-000.00 real estate broker’s fee. At a real estate closing, ICC (the seller) “advanced” a real estate broker’s commission for Orange Entertainment Center, Inc. (Orange). ICC argues that Orange breached its duty to repay ICC the commission pursuant to the terms of a real estate contract entered into on November 28, 1983, and an amendment dated January 4, 1984. Orange argues that no commission reimbursement is due to ICC from Orange under those documents. We reverse.
The trial judge explored at least three interpretations of the contract and amendment, and heard conflicting parol evidence.[1] He ruled for Orange, although he failed to state the basis for his decision, and he made no findings of fact. Under these circumstances we must affirm the lower court if there is a valid basis in the record for doing so. Helman v. Seaboard Coast Line R. Co., 349 So.2d 1187 (Fla. 1977); Holland v. Gross, 89 So.2d 255 (Fla. *171 1956); Jimenez v. Gulf & Western Mfg. Co., 458 So.2d 58 (Fla. 3d DCA 1984); Bornstein v. Somerson, 341 So.2d 1043 (Fla. 2d DCA), cert. denied, 348 So.2d 944 (Fla.1977).
The contract between Orange and ICC involved a purchase of 177.04 acres located near International Drive in Orange County for $13,500,000.00. Under the contract Orange was responsible for the real estate commission. However, a condition of closing was that a restrictive covenant which prevented commercial use of some of the land under contract (the Shadowood Apartment land) be removed within 120 days.
ICC failed to get the restrictive covenant removed within that time. In order to preserve the deal, the parties drafted an amendment.[2] It provided the parties would close on the 57.78 acres which were not encumbered by the restriction. A second closing on the balance of the lands under the contract would follow when ICC obtained a release of the restriction. If the restriction could not be removed by June 1, 1985, various options could be selected by the parties. However, the amendment did not specifically state which party would have the ultimate liability for the real estate commission if the closing on the balance of the lands did not take place. Paragraph 5 provided that Orange would reimburse ICC for the commission “[A]t the closing as to the balance of the lands.... in addition to other payments due from Buyer at closing.” But neither paragraph 4 nor 5 specifically provided for reimbursement in the event the restriction could not be removed and there was no closing on the balance of the lands.
Pursuant to the amendment, ICC paid the broker $200,000.00 at the closing on the 57.28 acres for its commission on those lands. By the June 1 deadline, ICC had not succeeded in removing the restriction on the balance of the contract lands. This brought into play the elections set forth in the Amendment. At first, Orange did not choose to keep the 57.28 acres (Option 4). Thereupon ICC’s options came into play. It elected to take back the 57.28 acres and *172 swap them for 314 acres it had under option, located near the John Young Parkway in Orlando (Option 4B).
At this point, contingencies evolved which were unforeseen by the drafters of the Amendment. Orange refused to close on the 4B option lands because it claimed they were low lying and less valuable than had been represented. ICC tried to conduct a closing but Orange refused to attend. ICC claimed Orange breached the contract, but it did not seek to enforce the swap of lands pursuant to option 4B against Orange. In this suit it merely sought reimbursement for the real estate commission, pursuant to the contract and amendment. Similarly, Orange did not defend on the basis that ICC breached the contract by offering unsuitable lands to swap, and it did not offer to reconvey the 57.28 acres. Rather it simply claimed it owed no real estate commission under the contract and its Amendment. In effect, the parties took legal positions compatible with Option 4 pursuant to which Orange retains the 57.28 acres and the contract is terminated as to the balance of the lands.[3]
The key issue in this appeal is to determine whether or not the contract and the Amendment are ambiguous concerning Orange’s duty to reimburse ICC for its advance of the $200,000.00 commission in the event the restriction was not removed from the balance of the lands under contract, and the parties elected options under Paragraph 4. One interpretation is that since the original contract placed on Orange the liability for the brokerage commission, the amendment did not alter this duty by failing to refer to it again, in the context of the options. Another interpretation is that the parties intended that Orange would have no duty to reimburse ICC for the commission in the event the restrictions could not be removed and one of the options was chosen.
This latter view is persuasive particularly with regard to option 4A and 4B. Under Option 4A, Orange and ICC would have rescinded the whole transaction, and it would follow that no commission would be owed by either party. Counsel for ICC admitted at trial no reimbursement would be due if Option 4A were followed. Similarly, under option 4B, the swapped lands might generate no obligation to the broker for a commission, since the lands for which it had a listing would be returned to ICC and no sale of them would take place.
However, with regard to option 4 (the one which de facto occurred in this case) the logic and equity for requiring Orange to reimburse ICC for the commission is stronger. Orange owed the commission under the basic real estate contract; a sale of lands to Orange took place; the commission payment related to those 57.28 acres actually sold; and the broker earned this commission. Reference to the second closing involving sale of the “balance of the lands” in Paragraph 5 of the Amendment can be viewed as merely a statement as to a time of payment or reimbursement of the commission — not a condition precedent to Orange’s liability therefore. Southern Surety Co. v. MacMillan Co., 58 F.2d 541 (10th Cir.1932); Southern Colonization v. Derfler, 73 Fla. 924, 75 So. 790 (1917). Cf. Peacock Construction Co., Inc. v. Modern Air Conditioning, 353 So.2d 840 (Fla.1977). Since no time was set for reimbursement under Option 4, a court can read into the contract a “reasonable time” after Orange elected to go with that option for reimbursement of the commission. Ballas v. Lake Weir Light & Power, 100 Fla. 913, 130 So. 421 (1930); Mohawk, Inc. v. Cohen, 125 So.2d 909 (Fla. 3d DCA 1961), reversed on other grounds, 137 So.2d 222 (Fla.1962).
We conclude that the latter is the most reasonable construction of the documents, and the one most consistent with the parties’ intent at the time the contract and the amendment were drafted. Morris v. Federated Mutual Ins. Co., 497 F.2d 538 *173 (5th Cir.1974); Shuford Development Co. v. Chrysler, 449 F.2d 429 (5th Cir.1971). Therefore, it is the one which should be controlling. It is also the construction which best achieves justice and equity between the parties. Wright & Seaton, Inc. v. Prescott, 420 So.2d 623 (Fla. 4th DCA 1982); Comwel Development Corp. v. City of Deerfield Beach, 382 So.2d 716 (Fla. 4th DCA 1980); Bouden v. Walker, 266 So.2d 353 (Fla. 2d DCA 1972). We do not think the contract and amendment were sufficiently ambiguous regarding the de facto option which occurred in this case to make parol evidence properly admissible. Indemnity Insurance Co. of North America v. Dupont, 292 F.2d 569 (5th Cir.1961); J.C. Penney Co., Inc. v. Koff 345 So.2d 732 (Fla. 4th DCA 1977); Atlas Sewing Center, Inc. v. Belk’s Dept. Store of West Palm Beach, 162 So.2d 274 (Fla. 2d DCA 1964). It should have been disregarded. Accordingly, the judgment appealed is
REVERSED.
COBB, C.J., and UPCHURCH, J., concur.

. The witness for ICC, Mr. Donnelly, testified that payment of the commission was and always remained Orange’s liability under the contract and the amendment. The witness for Orange, Mr. Fredrick, testified that Orange had no liability for the commission if the restriction on use of the balance of the lands was not removed and the contract closed in conformity with the original contract.

. The Amendment provided:
4. The closing as to the balance of the lands.... If the land use restriction is not so removed on or before June 1, 1984, then, unless Buyer elects by June 3, 1984, to retain title to the 37.28 acre Town Center Commercial parcel and the north 20 acres of the Town Center Extension parcel and to terminate the contract as to the balance of the lands, seller shall:
A. Pay to Buyer, by June 6, 1984, $4,000,-000.00 plus all reasonable costs actually incurred by Buyer in connection with the Initial Closing, including interest paid or incurred to Sunrise Savings and Loan Association of Florida ("Sunrise”) to June 6, 1984, all closing costs incidental to Buyer’s mortgage loan from Sunrise, as shown on Buyer’s loan closing statement, all closing costs paid by Buyer in connection with the Initial Closing, and Buyer’s attorney’s fees paid to Osborne & Hankins. In return for such payment, Buyer shall simultaneously convey to Seller the 37.-28 acre Town Center Commercial parcel and the north 20 acres of the Town Center Extension parcel without any additional restrictions and free from encumbrances placed thereon by Buyer. Seller shall pay documentary stamp taxes on the deed. Upon said conveyance the agreement shall terminate and Buyer and Seller shall be relieved of all further liability thereunder; or
B. Confirm to Buyer by June 6, 1984, that it has exercised its option with Florida Land Company to purchase the following parcels. ... Simultaneously with the closing of Seller’s purchase under the Florida Land Company option, but not earlier than July 20, 1984, Seller shall convey said parcels to Buyer and Sunrise Savings and Loan Association of Florida, with no restrictions or encumbrances of any kind or nature placed thereon by Seller, for a purchase price that is equal to the option price paid by Seller under the Florida Land Company option. In return for such conveyance, Buyer shall simultaneously convey to Seller the 37.28 acre Town Center Commercial parcel and the north 20 acres of the Town Center Extension parcel, without any additional restrictions and free from encumbrances placed thereon by Buyer. Each party shall pay documentary stamp taxes on the deed given by it. Upon such conveyance the . agreement shall terminate and Buyer and Seller shall be relieved of all further liability thereunder.
5. At the Initial Closing, seller shall advance to Horton Realty of Central Florida, Inc. a commission equal to $200,000.00. At the closing as to the balance of the lands, the amount of said commission shall be reimbursed to Seller by Buyer, in addition to other payments due from Buyer at closing. (Emphasis supplied).

. Appellate counsel for both parties stated to this Court that they agree this is their present posture under the contract and its amendment.