PER CURIAM.
The appellant, Michael O’Dell, appeals the dissolution judgment regarding the award to his former wife, Linda Jean O’Dell, of a special equity in his premarital property; the distribution of marital assets; the award to the wife of rehabilitative alimony for five years; and the award to the wife of attorney’s fees.
The parties were married on January 27, 1979, and have one minor child, Kerry Ayn, born October 20, 1979. At the time of the dissolution, the husband was 42 years old, a high school graduate who had taken some junior college courses, but had not obtained a degree, and was in reasonably good health. The 43-year old wife was a high school graduate who had attended Syracuse University for 1½ years and had completed some medical lab technician training and some minimal computer courses. The husband operated his own automotive repair business, which he had owned prior to the marriage. The wife was employed by City Gas Company in a clerical position.
The final judgment awarded $350 per month in child support, $250 per month in rehabilitative alimony for five years, and distributed the property of the parties. The final judgment also ordered the husband to pay $2,000 towards the wife’s attorneys fees.
The husband had previously been married to Debra, and owned a single family residence from that marriage at 1520 Island Drive, Merritt Island, Florida (the premarital residence). Linda lived in that residence prior to the marriage. In February 1987, a quit claim deed was executed from Michael and Debra O’Dell to Michael and Linda O’Dell. The reason for this deed was that Linda’s friend, Diane Teague, a real estate salesperson, informed the husband that Florida law required both the husband and wife’s name on a deed so that the property would pass to the surviving spouse in the event of the death of the other spouse.
The husband and wife occupied the premarital residence until they purchased a new residence at 1550 Holly Avenue, Mer *1089 ritt Island, Florida (the marital residence) on March 31, 1983. Thereafter, the premarital residence was rented for several years until it was subsequently sold on June 27, 1987. A purchase money mortgage and note was received by Michael and Linda in the original principal amount of $22,000 with interest at 10.5 percent per annum, $296.86 per month, commencing on July 22, 1987. At the time of the trial, the note and mortgage were in default and foreclosure proceedings were to be instituted. The only evidence as to the value of the premarital residence was Linda’s testimony that it was worth $25,000.00 when she moved into it in May, 1976, and that it was sold for $45,000.00.
During the marriage, the parties maintained separate checking accounts, and deposited into his/her own account all of the funds earned by that party. There was no commingling of funds with respect to earned income. The husband paid the mortgage and the wife paid for the children’s clothing, credit card accounts in her name, utilities and groceries. During this period of time, the wife saved $2,000 from her income. The trial court distributed the assets and liabilities as follows: The wife received a time share, purchased for $2,600; a 1978 Oldsmobile, value unknown; the marital residence; and all of the furniture located within the marital residence. The husband received his business,[1] a 1968 Oldsmobile Cutlass; a 1970-71 jet boat with an inoperable engine; a 1974 Chevrolet pickup truck; a 1971 Chevrolet convertible; a 1971 Chevrolet Monte Carlo; a 1964 Volkswagen; a 1956 Cadillac; miscellaneous auto parts; a 1955 Chevrolet pickup; and a 1931 Chevrolet four-door sedan. The value of these items was disputed by both parties. The husband was also awarded the mortgage proceeds from the premarital property. In addition to the above property distribution, alimony and child support awards, the husband was ordered to pay the sum of $2,000 to the wife’s attorney for counsel fees, and ordered to maintain a $50,000 life insurance policy upon himself for the benefit of the minor child. He was also required to maintain health insurance for the minor child. The husband contends the fair market value of the residence is $90,000 with existing mortgages of $45,000 or a total net equity of $45,000. This would give each party a net equity of $22,-500. In contrast, the wife argues the net equity is $13,600 per person. However, the husband notes that in the wife’s pretrial statement she conceded the net equity in the residence was $45,000.
In respect to the first issue raised on appeal, we hold that the trial court erred in finding that the wife had established a special equity in the husband’s premarital property. The trial court found that there was no gift to Linda of the premarital residence but that she had established a special equity in it by reasons of acts of personal labor directed to it — e.g., handling rentals, repairs and maintenance. We disagree with the trial court in regard to this award for two reasons: (1) the wife never claimed a special equity in the premarital property;[2] and (2) there was no evidence adduced to show any extraordinary contribution of funds or services by Linda to the premarital property, as required by Duncan v. Duncan, 356 So.2d 28 (Fla. 1st DCA 1978), cert. denied, 379 So.2d 949 (Fla.1980), or, assuming enhancement, the dollar value of that enhancement. See Wallace v. Wallace, 453 So.2d 535 (Fla. 5th DCA 1984).
Michael O’Dell’s second issue is related to the first. He asserts the trial court made a disparate distribution of the marital assets. The trial court awarded the husband’s one-half interest in the marital domicile to the wife as an “offset” for the special equity it erroneously found the wife to have acquired in the husband’s premarital property. That award must therefore be reversed along with the special equity claim. The values contended by *1090 the parties in regard to the other marital assets are at variance, and the trial judge did not make special factual findings in regard to these values. Nor have we required such factual itemizations in the past. International Community Corp. v. Orange Entertainment Center, Inc., 490 So.2d 169 (Fla. 5th DCA 1986). Other than the erroneous offset, the record does not clearly reveal an arbitrary, fanciful or unreasonable division of the marital assets. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980).
Given our reversal of the special equity award and the consequent “offset” of the one-half interest in the marital domicile, and the impact of such reversal on the overall distribution scheme of the trial court, we remand for reconsideration of the issues of equitable distribution and rehabilitative alimony. See Noah v. Noah, 491 So.2d 1124 (Fla.1986); Womble v. Womble, 546 So.2d 24 (Fla. 5th DCA 1989).
REVERSED AND REMANDED.
GOSHORN, C.J., and COBB, J., concur.
W. SHARP, J., concurs specially with opinion.

. Actually, it is accurate to say that he retained his business which was commenced prior to the marriage, and in which the wife did not participate.

. At trial, counsel for the wife candidly advised the trial court that no special equity in the premarital property was asked for. The trial court apparently ignored this concession.