W. SHARP, Judge,
concurring in part and dissenting in part.
I agree that this case should be remanded for an award to the former wife, Katherine Kunzweiler, for the payment of her medical expenses, a marital debt. However, I disagree that the award of rehabilitative alimony to Katherine should be vacated. The trial court found that there was a need for rehabilitative alimony to permit Katherine to recover from, the emotional injury suffered by her due to the divorce and that a reasonable period of spousal support would be 18 months. I would affirm this award because the record supports this exercise of the trial court’s discretion. Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980)
Rehabilitative alimony awards are not limited solely to spouses who need support to complete a course of study or training. Other circumstances, including a needed grace period necessary to recover from the trauma of dissolution, may justify an award of rehabilitative alimony. O’Dell v. O’Dell, 583 So.2d 1087, 1092 (Fla. 5th DCA 1991) (Sharp, J., concurring). See also Campbell v. Campbell, 432 So.2d 666, 668 (Fla. 5th DCA 1983), petition for rev. dismissed, 453 So.2d 1364 (Fla.1984) (rehabilitative alimony appropriate where spouse has the capacity or potential for self support but is not quite ready to weather the storm alone); Veach v. Veach, 407 So.2d 308, 309 (Fla. 4th DCA 1981), receded from on other grounds, Kelsey v. Kelsey, 636 So.2d 77 (Fla. 4th DCA 1994) (purpose of rehabilitative alimony is to sustain the dependent spouse until he or she can “go it alone”); Lash v. Lash, 307 So.2d 241, 242 (Fla. 2d DCA 1975) (provision authorizing rehabilitative alimony permits the trial court to award support to a needy spouse for a limited time until she gets back on her feet and becomes self-sustaining).
In considering whether an award of alimony is appropriate, section 61.08(1) specifically directs the trial court to consider the “physical and emotional condition of each party” (emphasis added). § 61.08(2)(c), Fla. Stat. (1995); Harrison v. Harrison, 540 So.2d 230 (Fla. 1st DCA 1989). The dependent spouse’s emotional or mental condition may justify an award of alimony, either permanent or rehabilitative. See Kesling v. Kesling, 661 So.2d 919 (Fla. 2d DCA 1995) (trial judge erred in denying alimony to a wife who suffered fi*om chronic depression that affected her personal life and her employability; wife may also be entitled to an award of rehabilitative alimony, in addition to permanent alimony, because of testimony that her mental condition may improve after the stress of the divorce is over and she may be able to be retrained); Harrison (cause remanded for court to consider to what extent the wife’s emotional condition affected her earning capacity for purposes of awarding permanent alimony).
In the present ease, Katherine was diagnosed as manic depressive in 1990. Kath *1253 erine went for medical treatment once a week, sometimes more, and started taking medication. In the six years that she has been treated for manic depression, Katherine has had two psychiatric hospitalizations and the doctors have not been able to control her illness.
Despite her illness, Katherine has been able to work — she was a buyer for Rockwell International for 3]4 years, purchasing parts for the space shuttle. However, in 1993, Katherine was laid off from Rockwell, because her illness gradually became so cumbersome that she was not able to work. Katherine looked for work for about a year and after that she “lost hope.”
Katherine met William in May 1994. Katherine explained to William about her disability and that she was without current financing as her private disability insurance had stopped. William said that he could provide for them and that he understood— having been through a severe illness with a prior wife. William offered to support Katherine and they agreed that she would perform the usual housewife services and support.
The parties were married in October 1994. (This was William’s 12th marriage). William supported the two — he paid the mortgage, utilities and all the basic bills. A few months later, in February 1995, Katherine was hit by a car. She needed about seven months of therapy several times a week to heal. Just as she was getting better, she fell down a flight of stairs and hurt herself again.
By June 1995, William had left Katherine, moved in with another woman, and filed for dissolution of their marriage. During the proceedings, Katherine was awarded $1,300 in temporary support. William has worked at Rockwell for over 30 years and earns over $45,000; he also earns additional monies as an antiques and gun dealer.
Katherine is being treated by Dr. Ernest Seiler, a psychiatrist, whom she sees once a month. Katherine takes psychotropic medication, including Lithium, Paxil, and Lora-zepam, as well as medication for a thyroid condition. Under William’s health insurance plan, Katherine pays about $12.00 for a three-month supply of her medication. However, if she had to purchase this medication on her own, it would cost close to $300.00. Katherine is unable to get health insurance of her own because of her pre-existing condition.
Katherine’s Lithium dose had been recently increased and as a result, she experiences tremors. Other manifestations of her illness include the inability to work with fine information, written data, and mathematics. Extreme fatigue also makes it difficult for Katherine to be functional and rehable. Katherine pointed out that it was difficult to interact with others because people notice her tremors and the “voice I have now.” Katherine also suffers from memory problems.
Katherine’s memory problems have been as severe as not knowing how to get home. When she is alone or when she does not have another individual there to look after her, she becomes very fearful. Katherine gets a sense of strength from the other person’s presence. Katherine becomes extremely reclusive as a result of her fears and can go for two to three weeks without leaving the house to even go out into the yard. When Katherine experiences a manic phase, she feels more positive about her ability and will venture out for a few hours once or twice a week. The periods of mania usually run two weeks and then they are over. A manic phase is sometimes triggered by activities and contact with other people or by something that upsets her, such as these court proceedings. When Katherine experiences a stressful occasion, she will go into a manic phase probably the next week. Katherine was capable of understanding the proceedings but will have difficulty processing the information, that is, she will not remember the details of the proceedings.
Katherine is able to do some things when she is in a relationship with someone that she can’t do on her own. She has learned that she attaches herself to one person and they become her “safety person.” Katherine can then function outside the home with them. When she is away from them, she cannot function for a period of time until she is able to establish a friendship with someone else that she can attach herself to, more or less, so that she can go out in public. Otherwise, *1254 Katherine stays within her home. Katherine had that type of attachment with William when they were first married.
As the majority points out, Katherine is capable of functioning intellectually — she has a college degree and credits toward her Masters degree. Unfortunately, Katherine also suffers from manic depression.[1] Manic depression or bipolar disorder, as it is now commonly called, is a recognized disability. See The Florida Bar v. Clement, 662 So.2d 690 (Fla.1995), cert. denied, — U.S. -, 116 S.Ct. 1829, 134 L.Ed.2d 933 (1996) (attorney’s bipolar disorder is a disability under the Americans with Disabilities Act).
According to Katherine, her disorder is exacerbated by stress, and this dissolution proceeding was extremely stressful for her. For most people, divorce is one of life’s most stressful experiences. Hon. Anne Kass, “Truthfulness” and “Accuracy” in Divorce Cases, 15 No. 5 Fair$hare 18 (May 1995). Only the death of a spouse is generally reported to be more stressful for adults than divorce; separation and divorce are consistently rated more stressful than going to jail, losing a job, personal injury, illness, mortgage foreclosure, and all other distressing life experiences except the death of a spouse. Lynn Wardle, No-Fault Divorce and the Divorce Conundrum, 1991 B.Y.U.L.Rev. 79, 101. See also Elizabeth Van Arsdale, Reduce Stress by Redefining Your Role, 16-WTR Fam. Advoc. 28 (1994) (divorce is one of the most traumatic events that can happen to a person, second only to the death of a loved one). For even healthy personalities, divorce is a severe challenge. For persons with significant pathology, the stress of divorce can cause an emotional crisis. Sam Marguiles and Anya Luchow, The Initiator and the Noninitiator of a Divorce, 14 No.4 Fair$hare 3 (April 1994). See also Wardle, 1991 B.Y.U.L.Rev. at 126 (divorce causes, exacerbates or unleashes a host of serious psychological problems).
Although Katherine is well-educated and capable of employment, it seems she will be unable to work outside the home until she regains control over her manic depression. The trial court found she is in need of short-term support to manage her emotional disorder, which was exacerbated by the trauma of divorcing. I submit that competent evidence supports the trial court’s award and we should affirm.
In my view, an award of rehabilitative alimony is justified in these circumstances, to give Katherine time to recover from the trauma of this divorce. See Kesling. See also Mahoney v. Gay, 516 So.2d 86 (Fla. 3d DCA 1987) (award of lump sum alimony upheld even though parties had a childless, short-term marriage of three and one-half years, were separated during 16 months of that time, where wife had suffered from significant handicaps throughout her life and had most recently suffered a serious mental collapse and was unemployable).

. In Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), the Florida Supreme Court noted that the trial judge is in the better position to determine what is appropriate in dissolution proceedings because only he or she can personally observe the participants and the events of the trial. See also Kozak v. Kozak, 507 So.2d 718 (Fla. 3d DCA 1987) (notwithstanding the difficulties which trial judges face in dissolution proceedings, there is no question that they, having heard all of the evidence and observed the demeanor of the witnesses, are in a better position than appellate court to distribute the property and assess the parties' needs and capabilities). While Katherine was admittedly not a medical expert, her physical and mental condition was obvious to the trial judge. Katherine talked about problems with her voice and the fact that she was experiencing tremors with the increase in her Lithium medication. Katherine also talked about her memory problems and had difficulty answering many questions because of memory lapses.